624 S.E.2d 125

**LAWYER DISCIPLINARY
BOARD, Complainant,**

v.

**Theodore R. DUES, Jr., A Member of the
West Virginia State Bar, Respondent.**

No. 31713.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 1, 2005.

Decided Nov. 17, 2005.

Dissenting Opinion of Justice
Benjamin Dec. 19, 2005.

Lawrence J. Lewis, Chief Lawyer Disciplinary Counsel, Rachael L. Fletcher, Lawyer Disciplinary Counsel, Charleston, for Complainant.

Thomas W. Smith, Charleston, for Respondent.

DAVIS, J.

This is a lawyer disciplinary proceeding brought against Theodore R. Dues, Jr. (hereinafter referred to as "Mr. Dues") by the Office of Disciplinary Counsel (hereinafter referred to as "the ODC") on behalf of the Lawyer Disciplinary Board (hereinafter referred to as "the Board"). A Hearing Panel Subcommittee of the Board determined that Mr. Dues committed thirty-nine violations of the Rules of Professional Conduct. Consequently, the Board and The ODC have recommended (1) that Mr. Dues' license to practice law be suspended for eighteen months; (2) that he establish, as a condition of reinstatement, that he is mentally and emotionally fit to practice law; (3) that upon reinstatement he be supervised in the practice of law for two years; (4) that he make restitution to various former clients in an amount that totals $13,000.00; (5) that he reimburse the State Bar Client Protection Fund $5,500.00; and (6) that he pay the costs of this disciplinary proceeding in the amount of $1,968.16.

Mr. Dues does not contest the Board's findings of thirty-nine violations of the Rules of Professional Conduct. However, Mr. Dues contends that the suspension recommendation is too harsh in light of mitigating circumstances. Based upon the parties' arguments to this Court, the record designated for our consideration, and the pertinent authorities, we agree with Mr. Dues that a suspension of his law license is not appropriate. Consequently, we conclude that the following sanctions shall be imposed upon Mr. Dues: (1) public reprimand; (2) that for a period of twenty-four months his practice of law shall be restricted solely to work as a mental hygiene commissioner; (3) that he shall be supervised during this period by the

chief judge[1] of the Circuit Court of Kanawha County; (4) that as a condition of returning to the full practice of law at the end of the twenty-four month period, he must provide the Office of Disciplinary Counsel with written documentation from a mental health provider indicating that his diagnosed severe depression is under control; (5) that he make restitution to various former clients in an amount that totals $13,000.00; (6) that he reimburse the State Bar Client Protection Fund $5,500.00; and (7) that he pay the costs of this disciplinary proceeding in the amount of $1,968.16.

## I.

### FACTUAL BACKGROUND

On March 1, 2004, an eleven count statement of charges was filed against Mr. Dues by an investigative panel. The charges arose as a result of nine complaints filed against him by former clients and two complaints filed by the ODC. The facts underlying each of the eleven counts are summarized below.

**First Charge.** In January of 2001, James C. Meeks retained Mr. Dues to represent him in a civil action in which Mr. Meeks was sued in his capacity as executor of his mother's estate. In March of 2002, Mr. Dues informed Mr. Meeks that he was going to have heart surgery and that other attorneys would be available to handle his case. However, no other attorney contacted Mr. Meeks. It was not until November of 2002 that Mr. Meeks was able to make contact with Mr. Dues. During the November contact, Mr. Dues informed Mr. Meeks that he was scheduling a meeting with a judge and that he would contact Mr. Meeks in two weeks. Mr. Dues failed to contact Mr. Meeks as promised. After several attempts to contact Mr. Dues, Mr. Meeks filed an ethics complaint on March 15, 2003. Subsequent to the filing of the ethics complaint, the ODC attempted to communicate with Mr. Dues by mail on two occasions. He made no response to either communication.

As a consequence of Mr. Meeks' complaint, the Board found that Mr. Dues violated Rule 1.3 by not pursuing the case diligently.[2] The Board also determined that Mr. Dues violated Rule 1.4 by failing to communicate with his client,[3] and Rule 1.16(d) by failing to terminate representation.[4] Additionally, the Board found that Mr. Dues' failure to respond to the ODC's correspondence was a violation of Rule 8.1(b).[5]

**Second Charge.** In 1998, Lavern E. Ruth retained Mr. Dues to represent her son, who had received a leg injury in an automobile accident. Mr. Dues settled the case out of court. As a result of complications arising from surgery on her son's leg, Ms. Ruth retained Mr. Dues for the purpose of bringing a medical malpractice action. In July of 2001, Ms. Ruth paid Mr. Dues $1,058.92 for an expert to review her son's medical records. Ms. Ruth was not pleased with the results of the review and thereafter, in January of 2002, she paid Mr. Dues an additional $2,000.00 for a second opinion by another

---

1. Pursuant to W. Va.Code § 27–5–1 (2002) (Repl. Vol.2004) the chief judge of each circuit appoints attorneys to serve as mental hygiene commissioners.

2. Rule 1.3 provides as follows:
   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 provides as follows:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 1.16(d) provides as follows:

   (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

5. Rule 8.1(b) provides as follows:

   [A] lawyer in connection with ... with a disciplinary matter, shall not:
   (b) ... knowingly fail to respond to a lawful demand for information from ... disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

expert. As a result of Mr. Dues' failure to provide Ms. Ruth with information about the second expert review, she filed an ethics complaint in April of 2003. After the filing of the ethics complaint, the ODC attempted to communicate with Mr. Dues by mail on two occasions. He failed to respond to either communication.

As a consequence of Ms. Ruth's complaint, the Board found that Mr. Dues violated Rule 1.3 by not pursuing the case diligently,[6] and Rule 1.4 by failing to communicate with his client.[7] Additionally, the Board found that Mr. Dues' failure to respond to the ODC's correspondence was a violation of Rule 8.1(b).[8]

**Third Charge.** On an unspecified date Herbert and Hubert McKinney retained Mr. Dues to represent them in several matters. At some unknown period, communication between Mr. Dues and the McKinneys stopped. In April of 2003, the McKinneys sent a letter to Mr. Dues and requested the return of their file materials. The letter was returned marked "Unclaimed." Thereafter, in May of 2003, the McKinneys filed an ethics complaint against Mr. Dues. After the filing of the ethics complaint, the ODC attempted to communicate with Mr. Dues by mail on one occasion, but no response was made to the communication.

As a consequence of the McKinneys' complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to communicate with his clients,[9] and Rule 1.16(d) by failing to return the McKinneys' file materials.[10] Additionally, the Board found that Mr. Dues' failure to respond to the ODC's correspondence was a violation of Rule 8.1(b).[11]

**Fourth Charge.** In 2000, Mr. Dues filed a medical malpractice action on behalf of Jean-nettia D. Spencer. During the course of the litigation, Mr. Dues failed to engage in discovery and neglected the case. The case was eventually dismissed with prejudice without Ms. Spencer's knowledge. As a result of Mr. Dues' failure to keep in contact with Ms. Spencer, she sent him a letter terminating his services and requesting her file materials. Mr. Dues failed to turn over the file materials. In June of 2003, Ms. Spencer filed an ethics complaint against Mr. Dues. After the filing of the ethics complaint, the ODC attempted to communicate with Mr. Dues by mail on one occasion, but no response was made to the communication.

As a consequence of Ms. Spencer's complaint, the Board found that Mr. Dues violated Rule 1.1 by failing to competently represent his client.[12] The Board also found that Mr. Dues violated Rule 1.4 by failing to communicate with his clients,[13] and Rule 1.16(d) by failing to return Ms. Spencer's file materials.[14] Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[15]

**Fifth Charge.** In March of 2002, Raymond J. Smith paid Mr. Dues $3,500.00 as a retaining fee to represent him in a discrimination case. Prior to the case going to trial, Mr. Dues referred the case to another attorney. In doing so, Mr. Dues agreed to forward a portion of the retainer fee, $2,700.00, to the new attorney and to return the balance of $800.00 to Mr. Smith. However, Mr. Dues failed to return the money promised to Mr. Smith. After Mr. Smith made several unsuccessful attempts to contact Mr. Dues, he filed an ethics complaint in July of 2003. After the filing of the ethics complaint, The ODC attempted to communicate with Mr.

---

6. For the text of Rule 1.3, see footnote 2.

7. For the text of Rule 1.4, see footnote 3.

8. For the text of Rule 8.1, see footnote 5.

9. For the text of Rule 1.4, see footnote 3.

10. For the text of Rule 1.16(d), see footnote 4.

11. For the text of Rule 8.1(b), see footnote 5.

12. Rule 1.1 provides as follows:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

13. For the text of Rule 1.4, see footnote 3.

14. For the text of Rule 1.16(d), see footnote 4.

15. For the text of Rule 8.1(b), see footnote 5.

Dues by mail on one occasion, but no response was made to the communication.

As a consequence of Mr. Smith's complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to communicate with his client.[16] The Board also found that Mr. Dues violated Rule 1.15(b) and (c),[17] and Rule 8.4(c) [18] by failing to return the balance of the retainer fee to Mr. Smith. Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[19]

**Sixth Charge.** Lois E. Heath retained Mr. Dues to represent her in a discrimination suit. In March of 2000, Mr. Dues informed Ms. Heath that a lawsuit had been filed and that she would receive a letter from him confirming that the action had been filed. Ms. Heath never received such a letter. Consequently, Ms. Heath contacted Mr. Dues' office. Ms. Heath was told that Mr. Dues was away on medical leave and that another attorney would contact her. However, no attorney contacted Ms. Heath. In July of 2003, Ms. Heath filed an ethics complaint against Mr. Dues. Subsequent to the filing of the ethics complaint, The ODC attempted to communicate with Mr. Dues by mail on two occasions, but no response was made to either communication.

As a consequence of Ms. Heath's complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to communicate with his client.[20] Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[21]

**Seventh Charge.** In 2000, Jeffrey L. Moss retained Mr. Dues to represent him in an employment discharge action. During the course of the litigation Mr. Dues failed to return telephone calls by Mr. Moss, cancelled scheduled appointments and failed to keep Mr. Moss abreast of the status of the case. Mr. Dues also failed to conduct discovery in the case and to properly brief matters for the court. After an adverse ruling was rendered in the case, Mr. Dues obtained a fee to file an appeal, but failed to do so. Mr. Moss filed an ethics complaint against Mr. Dues on February 14, 2003. Subsequent to the filing of the ethics complaint, The ODC attempted to communicate with Mr. Dues by mail on two occasions, but no response was made to either communication.

As a consequence of Mr. Moss' complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to communicate with his client.[22] The Board also found that Mr. Dues violated Rule 1.3 by not pursuing the case diligently,[23] and Rule 1.1 by failing to competently represent his client.[24] Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[25]

**Eighth Charge.** In April of 1997, Ruth E. Royal retained Mr. Dues to represent her in an employment dispute. Ms. Royal paid Mr. Dues $5,500.00 as a retaining fee. The rec-

---

16. For the text of Rule 1.4, see footnote 3.

17. Rule 1.15(b) and (c) provides as follows:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the por-

tion in dispute shall be kept separate by the lawyer until the dispute is resolved.

18. Rule 8.4(c) provides as follows:

It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

19. For the text of Rule 8.1(b), see footnote 5.

20. For the text of Rule 1.4, see footnote 3.

21. For the text of Rule 8.1(b), see footnote 5.

22. For the text of Rule 1.4, see footnote 3.

23. For the text of Rule 1.3, see footnote 2.

24. For the text of Rule 1.1, see footnote 12.

25. For the text of Rule 8.1(b), see footnote 5.

ord indicates that throughout the course of the litigation Mr. Dues neglected the case and failed to communicate with his client. The case was eventually dismissed because of Mr. Dues' failure to competently participate. Ms. Royal filed an ethics complaint against Mr. Dues on October 23, 2003. Subsequent to the filing of the ethics complaint, The ODC attempted to communicate with Mr. Dues by mail on two occasions, but no response was made to either communication.

As a consequence of Ms. Royal's complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to communicate with his client.[26] The Board also found that Mr. Dues violated Rule 1.3 by not pursuing the case diligently,[27] and Rule 1.1 by failing to competently represent his client.[28] Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[29]

**Ninth Charge.** Nancy C. Cooper retained Mr. Dues to represent her in an employment case in May of 2000. Ms. Cooper paid Mr. Dues $5,500.00 as a retaining fee. During the course of the litigation Mr. Dues informed Ms. Cooper that he was ill, but was able to continue to represent her. However, the record indicates that Mr. Dues neglected the case and failed to keep Ms. Cooper informed of the status of the case. Eventually a settlement agreement was reached in the case. Mr. Dues promised to return Ms. Cooper the retaining fee once the settlement was finalized. However, Ms. Cooper was forced to find another attorney to finalize the settlement, and she was never returned her retain-

er fee. Ms. Cooper filed an ethics complaint against Mr. Dues on November 13, 2003. Subsequent to the filing of the ethics complaint, The ODC attempted to communicate with Mr. Dues by mail on one occasion, but no response was made to the communication.

As a consequence of Ms. Cooper's complaint, the Board found that Mr. Dues violated Rule 1.4 by failing to keep his client aware of the status of her case.[30] The Board also found that Mr. Dues violated Rule 1.3 by not pursuing the case diligently,[31] and Rule 1.1 by failing to competently represent his client.[32] Further, the Board determined that Mr. Dues violated Rule 8.4(c) by failing to return the retainer fee to Ms. Cooper,[33] and Rule 1.16(a)(2) for failing to terminate representation when his health materially impaired his ability to represent Ms. Cooper.[34] Additionally, the Board found that Mr. Dues' failure to respond to The ODC's correspondence was a violation of Rule 8.1(b).[35]

**Tenth and Eleventh Charges.** The record is not clear, but it appears that The ODC filed two charges against Mr. Dues. One charge involves Mr. Dues' failure to attend a disciplinary deposition hearing and to produce documents. The Board found that this conduct violated Rule 8.4(c) and (d).[36] The second charge stems from Mr. Dues' failure to terminate representation of the complaining clients when his physical condition materially impaired his ability to represent them. The Board found that this conduct violated Rule 1.16(a)(2).[37]

26. For the text of Rule 1.4, see footnote 3.

27. For the text of Rule 1.3, see footnote 2.

28. For the text of Rule 1.1, see footnote 12.

29. For the text of Rule 8.1(b), see footnote 5.

30. For the text of Rule 1.4, see footnote 3.

31. For the text of Rule 1.3, see footnote 2.

32. For the text of Rule 1.1, see footnote 12.

33. For the text of Rule 8.4(c), see footnote 18.

34. Rule 1.16(a)(2) provides as follows:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.

35. For the text of Rule 8.1(b), see footnote 5.

36. Rule 8.4(c) and (d) provides as follows:
It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice.

37. For the text of Rule 1.16(a)(2), see footnote 34.

## II.

## STANDARD OF REVIEW

■ Our standard of review of lawyer disciplinary proceedings was set out in syllabus point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). Furthermore, we have made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

## III.

## DISCUSSION

Mr. Dues does not contest the violations found by the Board. Therefore, we will not disturb the Board's determination that Mr. Dues engaged in conduct that violated thirty-nine provisions of the Rules of Professional Conduct. Further, Mr. Dues "does not oppose the imposition of any of the recommended sanctions other than the recommendation for an eighteen-month suspension of [his] license to practice law." In arguing against a suspension of his license to practice law, Mr. Dues contends that the debilitating condition of his mental health during the periods that the complaints arose is a mitigating factor that justifies not suspending his license to practice law. Instead, Mr. Dues requests this Court temporarily limit his practice of law to administrative matters such as mental health commissioner and guardian work. On the other hand, The ODC argues that the suspension recommendation by the Board is justified by the aggravating circumstances of this case. Moreover, The ODC contends that Mr. Dues' mental impairment is insufficient to justify a rejection of the suspension recommendation.[38]

### A. Aggravating Circumstances

This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In this proceeding, the ODC has cited to a number of factors which it contends are sufficiently aggravating to warrant suspending Mr. Dues' license to practice law.

The ODC notes that Mr. Dues initially failed to participate in the disciplinary proceedings. This conduct included failing to respond to the charges and failing to attend his scheduled deposition. The ODC also points out that at some point Mr. Dues closed his law office, but failed to return files or refund moneys to his clients. As a consequence of this conduct, the State Bar Client Protection Fund was required to reimburse one of Mr. Dues' clients a retaining fee in the amount of $5,500.00.

The thirty-nine violations found against Mr. Dues has also been cited by The ODC as an aggravating factor. In the *Scott* decision this Court "recognized 'multiple offenses' as

**38.** The specific factors which this Court considers in imposing sanctions for violating the Rules of Professional Conduct include:

(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or poten-

tial injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

Syl. pt. 4, in part, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). For the purposes of this proceeding, the fourth factor under *Jordan* is the dispositive consideration.

an aggravating factor in a lawyer disciplinary proceeding." *Scott*, 213 W.Va. at 217, 579 S.E.2d at 558. Further, The ODC points out that Mr. Dues has been previously disciplined by this Court in 1992 with a public reprimand for failing to file an income tax return.[39] This Court has held that " '[p]rior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust.' " *Lawyer Disciplinary Bd. v. Artimez*, 208 W.Va. 288, 297, 540 S.E.2d 156, 165 (2000) (quoting Syl. pt. 5, *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986)).

Finally, as an aggravating factor, The ODC has indicated that in 2002, three federal cases in which Mr. Dues was counsel were dismissed because of his failure to properly litigate the matters.

### B. Mitigating Circumstances

█ Mr. Dues contends that a suspension of his license to practice law is not appropriate because of mitigating circumstances surrounding the violations. We have held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In *Scott*, we outlined some considerations that are viewed as mitigating:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in

the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Scott*. In this proceeding Mr. Dues focuses primarily upon the mental impairment he had during the period in which the violations occurred.[40]

The record indicates that in 2002, Mr. Dues had a heart attack and triple bypass surgery. In 2003 he was admitted to the hospital on at least three occasions due to physical health problems, and also underwent a prostrate operation. The physical problems Mr. Dues experienced apparently led to severe depression. Consequently, on or about December of 2002, Mr. Dues began psychiatric treatment under the care of Dr. Martin J. Kommor, at the West Virginia University Department of Behavioral Medicine and Psychiatry, Charleston Division. At various times, Mr. Dues has been placed on the following medications to treat his depression: paxil, effexor and lexapro.

During the disciplinary hearing, an independent psychiatric evaluation was performed on Mr. Dues, at the request of The ODC, by Dr. Ralph S. Smith, Jr. A report was submitted by Dr. Smith in which he made the following assessment of Mr. Dues:

> It is my opinion that [Mr. Dues] did have a serious depression, which interfered with his functioning as an attorney during the times in question of most of the complaints. . . .
>
> If Mr. Dues is allowed to continue to practice, psychiatric treatment is imperative to prevent relapse of his depression and to support him in times of internal (physical illness) stress and external life stress. Due to the multiple episodes of depression and regressive behavior, he will probably need indefinite care to prevent

---

**39.** The opinion in that case was not published. *See Committee on Legal Ethics v. Dues*, No. 21424, December 11, 1992 (unpublished). The ODC has also noted that Mr. Dues was admonished by the Lawyer Disciplinary Board in 1999 for failing to respond to disciplinary authority.

**40.** Mr. Dues also contends, and we agree, that there is no evidence of a dishonest or selfish motive on his part in causing the violations, and that he has shown remorse.

future relapse. If his physical health holds up and his mental health stabilizes with continued psychiatric care, it is likely that his personality dysfunction will not express itself as severely as it has had in the past under the stressful situations and that he can function adequately.

### C. Sanctions

■ Mr. Dues contends that his mental disability is a mitigating circumstance. The ODC, on the other hand, argues that Mr. Dues' mental disability is not mitigating. Both parties cite to the criteria for establishing mental disability as a mitigating circumstance that is set out in Rule 9.32 of the ABA Standards for Imposing Lawyer Sanctions. Under Rule 9.32 a mental disability is considered mitigating when:

> (1) there is medical evidence that the respondent is affected by a ... mental disability; (2) the ... mental disability caused the misconduct; (3) the respondent's recovery from the ... mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA/BNA Lawyers' Manual on Professional Conduct, at 01:839 (2005). Because we believe that the mitigating mental disability standard established by the ABA is sound, we adopt that standard. Consequently, we hold that in a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

■ The ODC contends that Mr. Dues' mental disability is not mitigating because he is unable to satisfy the third and fourth factors of our test. We disagree.

Mr. Dues correctly points out that Dr. Smith has opined that he is making good progress through treatment for his depression, and that by maintaining such treatment he will be able to function adequately as an attorney. Moreover, the record clearly demonstrates that, throughout all of the recent difficulties Mr. Dues has had, the one area of law that he has shown he is able to handle without incident is the area of administrative law as a mental hygiene commissioner. We believe these facts satisfy the third and fourth requirements of Rule 9.32.

■ Having determined that Mr. Dues has established his mental disability as a mitigating factor, we must now determine what weight this mitigating factor should be given. In the commentary for Rule 9.32, the ABA has suggested the following weight categories:

> If the offense is proven to be attributable solely to a [mental] disability ..., it should be given the *greatest weight*. If it is principally responsible for the offense, it should be given *very great weight;* and if it is a substantial contributing cause of the offense, it should be given *great weight*. In all other cases in which the [mental] disability ... is considered as mitigating, it should be given *little weight*.

ABA/BNA Lawyers' Manual on Professional Conduct, at 01:840 (2005) (emphasis added). In the instant proceeding, we believe the unique facts involved here justify assigning the "greatest weight" to Mr. Dues' mental disability.

Mr. Dues was admitted to the practice of law in this state in 1978. From that time up until the complaints in the instant matter, this Court has never imposed a sanction against him for misconduct involving a client. The one instance, in 1992, in which this Court was called upon to reprimand Mr. Dues, the matter did not involve a client. In other words, from 1978 until approximately 2002, Mr. Dues was an outstanding lawyer for the public. It was only after Mr. Dues sustained a heart attack, triple bypass surgery and a prostrate operation that he began to falter in his duties and responsibilities as an attorney. Dr. Smith has attributed the legal deficiencies *directly* to the serious depression that flowed from Mr. Dues' physical impairments. As a result of the direct connection between

Mr. Dues' mental disability and the misconduct in this case, we are of the opinion that limiting his practice, as opposed to suspending his license, serves as an effective deterrent to other members of the Bar and maintains the public confidence in the ethical standards of the legal profession. *See* ABA/BNA Lawyers' Manual on Professional Conduct, at 01:814 ("In less serious cases of incompetence … a sanction requiring the lawyer … to limit [his/her] practice to handling certain types of cases may better protect the public than a period of suspension from practice.").

The ODC also contends that this Court's decision in *Scott* supports a suspension of Mr. Dues' law license. We disagree.

The decision in *Scott* involved an attorney who was found to have committed twenty-two violations of the Rules of Professional Conduct. This Court suspended the attorney's law license for three years.[41] One of the mitigating factors cited by the attorney in *Scott* was his diagnosis of Bipolar II Disorder. This Court rejected Bipolar II Disorder as a complete mitigating factor:

> In our review of the facts we find that Mr. Scott has failed to persuasively connect his Bipolar II Disorder with all of the conduct involved in this specific case. Arguably, the disorder may have played a role in Mr. Scott's lack of diligence with his civil cases and other matters. Consequently, the disorder would appear to be a mitigating factor on the issue of lack of diligence. However, nothing in Mr. Scott's brief indicates how Bipolar II Disorder

caused him to engage in dishonesty. No evidence was adduced that connected Mr. Scott's Bipolar II disorder to his pattern of lying and falsification to conceal his lack of diligence.

*Scott*, 213 W.Va. at 215, 579 S.E.2d at 556 (citation omitted).

A critical factor distinguishes *Scott* from the facts in the instant case. The attorney in *Scott* could not connect all of his legal deficiencies, i.e., lying to clients, judges, and officers of the court, and falsifying documents, to his Bipolar II Disorder. Contrariwise, Mr. Dues has presented unchallenged medical evidence that his legal deficiencies were *directly* connected to the serious depression that flowed from his physical problems. It is only because of this direct connection that we are compelled to accord the "greatest weight" to Mr. Dues' mental disability.

We wish to make clear that we appreciate the gravity of Mr. Dues' misconduct. Under a different set of facts, such misconduct could warrant a sanction greater than that recommended by the Board. However, we believe that the unique facts of this case convincingly demonstrate that, in addition to his clients, Mr. Dues was also a tragic victim in this matter. He was the victim of a mental disease that "the legal community has been slow to recognize … as a legitimate disease that merits attention." Todd Goren & Bethany Smith, "Depression as a Mitigating Factor in Lawyer Discipline," 14 Geo. J. Legal Ethics 1081, 1082 (2001).[42]

---

**41.** The Board had recommended that the attorney's license to practice law be annulled.

**42.** This disease has been summarized as follows: Depression … is a medical sickness with clear biological roots: people who suffer from severe depression have been found to have unusual levels of certain brain hormones. According to the American Psychiatric Association, a person is considered clinically depressed if they exhibit at least five or more of the following symptoms, with at least one of the first two symptoms existing:
(1) depressed mood most of the day, nearly every day, as indicated by subjective report (e.g., feels sad or empty) or observation made by others (e.g., appears tearful);
(2) markedly diminished interest or pleasure in all, or almost all activities most of the day

(as indicated by either subjective account or observation made by others);
(3) significant weight loss when not dieting or weight gain (e.g., a change of more than 5% of body weight in a month), or decrease or increase in appetite nearly every day;
(4) insomnia or hypersomnia nearly every day;
(5) psychomotor agitation or retardation nearly every day (observable by others, not merely subjective feeling of restlessness or being slowed down);
(6) fatigue or loss of energy nearly every day;
(7) feelings of worthlessness or excessive or inappropriate guilt … nearly every day (not merely self-reproach or guilt about being sick);
(8) diminished ability to think or concentrate, or indecisiveness, nearly every day (either by subjective account or observed by others);

## IV.

## CONCLUSION

In view of the foregoing, the following sanctions are imposed upon Mr. Dues: (1) public reprimand; (2) that for a period of twenty-four months his practice of law shall be restricted solely to work as a mental hygiene commissioner; (3) that he shall be supervised during this period by the Chief Judge of the Circuit Court of Kanawha County; (4) that as a condition of returning to the full practice of law at the end of the twenty-four month period, he must provide the Office of Disciplinary Counsel with written documentation from a mental health provider indicating that his diagnosed severe depression is under control; (5) that he make restitution to various former clients in an amount that totals $13,000.00; (6) that he reimburse the State Bar Client Protection Fund $5,500.00; and (7) that he pay the costs of this disciplinary proceeding in the amount of $1,968.16.

Public Reprimand.

BENJAMIN, Justice, dissenting.

(Filed Dec. 19, 2005)

I must respectfully dissent from the decision of my colleagues to reduce the sanctions recommended by the Lawyer Disciplinary Board in this matter. While the record demonstrates mitigating factors in Mr. Dues' ac-

(9) recurrent thoughts of death (not just fear of dying), recurrent suicidal ideation without specific plan, or a suicide attempt or a specific plan for committing suicide;

Depression has been found to be comparable with, or worse than, chronic medical conditions such as hypertension, diabetes, angina, arthritis, back problems, lung problems, and gastrointestinal disorders....

....

Given that lawyers may disproportionately suffer from depression, there are several reasons why depression should receive more attention from the legal community. First, depression is more common today than any time in history and seems to be increasingly more common with every generation. Second, less than 20 percent of people who suffer from depression actually seek treatment, and of those who seek treatment some 20 to 50 percent terminate it prematurely. There is some good news for those who suffer from depression: with a combination of treatments and new drugs some 85

tions, I cannot overlook the impact of Mr. Dues' violations to his clients and, therefore, to the justice system.

In the instant matter, Mr. Dues admits to committing thirty-nine violations of the Rules of Professional Conduct. Although Mr. Dues suffered from physical and mental health problems, these violations caused serious harm to his clients. By impairing his client's legal rights, including in some cases missing filing deadlines, Mr. Dues violated a sacred trust between an attorney and client. Viewing the entire record, I believe the sanctions recommended by the Lawyer Disciplinary Board were appropriate and fair to adequately address the seriousness of Mr. Dues' conduct, in light of his demonstrated mental illness, and to attempt to restore his former clients' confidence in the legal profession.[1]

Depression is an insidious and terrible disease historically stigmatized by our society. It hurts not only the person inflicted, but all those around that person. We must do everything possible to encourage persons suffering from this disease to seek and receive the help that they need. However, our compassion for the person inflicted should not include condoning harm to innocent persons arising from a failure or refusal to get appropriate help for a mental illness, such as depression. By enforcing appropriate consequences for acts and/or omissions which harm their clients, we encourage attorneys to seek help at the earliest possible moment.[2]

percent of people are able to manage their depression and lead normal lives.

Goren & Smith, "Depression as a Mitigating Factor in Lawyer Discipline," 14 Geo. J. Legal Ethics at 1082–1084.

[1] I take this opportunity to suggest that we, as a Court, consider creating a rule which would, as a condition of practicing law in West Virginia, mandate all attorneys actively practicing in West Virginia, with some reasonable exceptions, to maintain legal malpractice insurance coverage generally sufficient to protect clients, and to produce proof of such coverage at the time annual bar dues are paid.

[2] Any member of the West Virginia State Bar suffering from a mental illness, such as depression, or abusing alcohol or drugs may seek assistance from our State Bar and are encouraged to do so. An attorney seeking assistance or who believes he or she may be in need of assistance may contact Executive Director Tom Tinder at

I am particularly disturbed by the majority's rejection of the eighteen month recommended suspension and its decision to permit Mr. Dues to serve as a mental hygiene commissioner for a period of twenty-four months under the supervision of the chief judge of the Circuit Court of Kanawha County. A mental hygiene commissioner, like an attorney, is in a position of public trust. Simply because Mr. Dues has, to date, not experienced problems when functioning as a mental hygiene commissioner does not mean problems will not arise before his severe depression is adequately controlled. I believe the recommended eighteen month suspension was appropriate and would have given Mr. Dues time to recover without the stress of either private practice or the duties of a mental hygiene commissioner.

Likewise, the majority's decision to allow Mr. Dues to return to the practice of law unsupervised after the twenty-four month period so long as he has documentation that his severe depression is under control is cause for concern. I agree with the recommendation of the Lawyer Disciplinary Board

that any return to the practice of law should be supervised for a period of at least two years. Depression can be a recurrent illness and stress is often a trigger for relapse. Under the majority's approach, there is no safety net to protect Mr. Dues' clients should the stress of a return to the practice of law trigger a relapse of severe depression. The Lawyer Disciplinary Board's recommendation best protects the judicial system. I truly hope the Mr. Dues is able to recover from his physical and mental health problems. However, I find the absence of such safety net to be unacceptable.

For these reasons, I respectfully dissent and would adopt the recommendations of the Lawyer Disciplinary Board.

---

(304) 558–7993 or (866) 989–8227. Mr. Tinder and the State Bar's Committee on Assistance and Intervention will keep the contact confidential and place the attorney in contact with appropriate professionals who will work with the attorney to both treat the illness and protect his or her clients.