639 S.E.2d 796

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**Desiree Lynnette ALBERS, Respondent.**

**No. 31279.**

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 25, 2006.

Decided: Nov. 29, 2006.

Rachael L. Fletcher, Esq., Lawyer Disciplinary Counsel, Charleston, for Petitioner.

Sherri D. Goodman, Esq., Charleston, for Respondent.

PER CURIAM.

This is a lawyer disciplinary proceeding brought against Desiree Lynnette Albers by the Lawyer Disciplinary Board (the "Board") arising from formal charges issued against Respondent on April 17, 2003, alleging the violation of Rule 8.4 of the West Virginia Rules of Professional Conduct. Respondent's law license was immediately suspended on June 6, 2003. Respondent thereafter filed a Reinstatement Petition on December 16, 2005. In the interest of judicial economy, the hearings on the Statement of Charges and the Reinstatement Petition were merged into a single hearing, which was held on April 27, 2006. The Hearing Panel Subcommittee (the "Panel") of the Board issued its recommendation to this Court setting forth findings of fact, conclusions of law, and recommended sanctions; but on June 28, 2006, this Court rejected the recommendation and ordered the parties to submit briefs in this matter. This Court has before it the briefs of the parties and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the Panel's record should be and is adopted.

I.

FACTS

Respondent was admitted to the practice of law on September 26, 2000. On August 22, 2001, Respondent was arrested and charged with violation of a domestic violence protection order.[1] Pending trial, she was placed on bond with a condition of home confinement. On October 2, 2001, an ethics complaint was filed against Respondent by Stacy L. Rudd, whose relationship with Respondent was entirely personal and was in no way related to Respondent's practice as an attorney.[2] Ms. Rudd alleged that Respondent had been harassing, stalking, and threatening her.

On October 10, 2001, Respondent was found not competent to stand trial and was committed to the William R. Sharpe, Jr., Hospital for a period not to exceed six months. On November 5, 2001, Respondent's license to practice law was placed under immediate administrative suspension pursuant to Rule 3.21 of the Rules of Lawyer Disciplinary Procedure due to her involuntary hospitalization. While at Sharpe Hospital, Respondent was diagnosed with a depressive disorder, not otherwise specified. In November of 2001, she was found competent to stand trial on the August 22, 2001, charges.

On December 17, 2001, Respondent plead no contest to the misdemeanor offenses of

---

1. It appears that the domestic violence protection order was meant to protect Respondent's ex-husband, Michael Albers.

2. Ms. Rudd and Mr. Albers were engaged in a relationship.

domestic assault, petit larceny, harassing telephone calls, and violation of a protective order. She was placed on probation.

In responding to the disciplinary charges against her, Respondent expressed regret and remorse for her actions, but pointed out that many of the actions alleged in Ms. Rudd's complaint did not involve Ms. Rudd at all and, instead, involved Michael Albers, Respondent's ex-husband. Moreover, Respondent pointed out that her inappropriate behavior was directly related to her depressive disorder. Respondent's license to practice was reinstated on April 24, 2002, subject to the condition that she practice under the supervision of another licensed attorney for one year.

On November 9, 2002, the Panel found that no further action was warranted as Respondent had made excellent progress in both her professional and personal life. However, on November 29, 2002, Respondent was again arrested and charged with the felony burglary of Mr. Albers' home.[3] On December 16, 2002, Respondent's probation under her 2001 conviction was revoked, and she was sentenced to twelve months in the Cabell County Jail. The disciplinary proceedings against Respondent were indefinitely stayed on May 19, 2003, pending Respondent's availability to defend the charges against her. On June 6, 2003, Respondent's license to practice law was again suspended.

On September 19, 2003, Respondent was indicted for domestic assault, trespass in structure, destruction of property, and felony burglary arising from the events of November 29, 2002. She was found guilty of misdemeanor destruction of property and misdemeanor trespassing on April 20, 2004, and was sentenced to home confinement for a period of ten months. On December 16, 2005, Respondent petitioned for the reinstatement of her law license. She successfully completed home confinement on February 12, 2006.

The stay of disciplinary proceedings was lifted on January 11, 2006, and a merged hearing was held on both the Statement of Charges and the Reinstatement Petition on April 27, 2006. At that time, the Panel con-

cluded that Respondent had violated Rule 8.4 of the West Virginia Rules of Professional Conduct, which finds that "[i]t is professional misconduct for a lawyer to... engage in conduct that is prejudicial to the administration of justice." Nonetheless, because Respondent had readily acknowledged her inappropriate conduct and was remorseful for it; because her license had already been suspended for nearly three years; and because she was determined to be psychologically competent to return to the practice of law, the Panel found that Respondent's license to practice law should be reinstated with the following conditions:

1. That Respondent be ordered to undergo eighteen months of supervised practice. The supervisor would be nominated by Respondent and approved by Disciplinary Counsel;

2. That because of the totality of the circumstances, including, but not limited to, her ex-husband's continued employment at the Huntington Police Department and the recommendations made by Dr. Mulder in the diagnostic evaluation, Respondent must inform her supervisor of all criminal cases she accepts for the period of the supervised practice;

3. That because of the above-referenced reasons, Respondent must refrain, for a period of eighteen months, from accepting any case wherein any member of the Huntington Police Department is involved in the matter;

4. That based on the totality of the circumstances, including, but not limited to, the psychological history of Respondent, that Respondent must undergo, for a period of six months, weekly comprehensive psychological counseling with a licensed mental health professional, and provide a report to Disciplinary Counsel at the end of the six-month period; and

5. That Respondent be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursu-

---

**3.** Apparently after arguing over whether Respondent would be able to spend time with their

daughter, Respondent forced her way into Mr. Albers' home.

ant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Respondent did not object to this recommendation; however, this Court asked the parties to further brief the matter.

## II.

### STANDARD OF REVIEW

■ We have held that " '[a] *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgement. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994)." Syl. Pt. 1, *Lawyer Disciplinary Bd. v. Losch*, 219 W.Va. 316, 633 S.E.2d 261 (2006). Nonetheless, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). With those standards in mind, we turn to a discussion of the facts as they apply to the law in this case.

## III.

### DISCUSSION

■ Rule 3.14 of the Rules of Lawyer Disciplinary Procedure finds:

It shall be a ground for discipline for a lawyer to (1) violate or attempt to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers; (2) engage in conduct violating applicable rules of professional conduct of another jurisdiction; (3) knowingly fail to respond to a lawful demand from an Investigative or Hearing Panel Subcommittee of the Lawyer Disciplinary Board, except that this rule does not require the disclosure of

information otherwise protected by applicable rules relating to confidentiality; or (4) willfully violate a valid order of the Lawyer Disciplinary Board or the Supreme Court of Appeals imposing discipline.

The Panel found, and we agree, that Respondent violated Rule 8.4 of the West Virginia Rules of Professional Conduct inasmuch as she "engage[d] in conduct that is prejudicial to the administration of justice" when she engaged in behavior in her personal life which ultimately led to her incarceration and, accordingly, her inability to represent the interests of her clients. Therefore, Respondent is subject to discipline.

We have established in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure that:

[i]n imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

The record evidences that Respondent has never violated any duty owed to a client. Rather, she engaged in conduct which was almost entirely self-destructive and which related to her failed marriage. Nonetheless, that self-destructive behavior violated duties to both the public and to the legal system while at the same time violating the tenets of professional conduct.

As evidenced by her statements of remorse, it is clear that Respondent acted "knowingly" and "intentionally;" however, her therapists agree that, at least to some degree, her behavior was likely affected by her diagnosed depressive disorder. Still, her behavior caused injury not only to her ex-husband and the legal system, but also to the public in general. We therefore turn to a consideration of what, if any, mitigating factors exist.

■ "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In Syllabus Point 3 of *Scott*, we held:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Here, Respondent had no disciplinary record prior to the instant matter. There was no dishonest or selfish motive behind Respondent's conduct, and Respondent was experiencing personal and emotional problems which seem to have triggered her conduct. She was in the midst of a difficult divorce and child custody arrangement, which fed a depressive disorder which stretched back to her college days when she was, herself, a victim of a violent crime. Since getting her emotional and personal problems under control, she has tried to rectify the situation, and she has always been fully cooperative with the disciplinary board.

■ Though Respondent is fairly inexperienced in the practice of law, experience is not a factor in this case because Respondent's conduct did not directly relate to her practice of law. Respondent's character and reputation among her peers is, according to those who spoke on her behalf, intact. And as mentioned before, it seems certain that Respondent's behavior was, at least to some degree, affected by a depressive disorder. We recently held in Syllabus Point 3 of *Lawyer Disciplinary Bd. v. Dues*, 218 W.Va. 104, 624 S.E.2d 125 (2005) that:

> In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Respondent's mental disability seems to now be under control, and Respondent's current behavior reflects her rehabilitation. This rehabilitation was a long road for Respondent to travel, and, accordingly, these proceedings were stayed for some time, leading to a nearly three-year suspension of her license. Respondent has persevered during this time in her attempts to get her life back on track and has shown remorse for her misdeeds.

■ In Syllabus Point 4 of *Scott*, we held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Certainly, Respondent's continued misconduct over a near two-year period, beginning in 2001 and ending in late 2002, is an aggravating factor. Respondent is, after all, a lawyer and is well aware of the bounds of legal conduct. Her conduct not only violated the law, but it burdened the justice system and jeopardized her clients. Nonetheless, Respondent has not violated the law since November of 2002. Furthermore, her license has been suspended for nearly three years. We agree with the Panel that such a long suspension is a sufficiently severe sanction for Respondent's conduct. Given that fact and that the mitigating factors here outweigh the aggravating factors, we believe that it is now appropriate to reinstate Respondent's license to practice law.

## IV.

## CONCLUSION

Accordingly, we accept the recommendation of the Lawyer Disciplinary Board. Respondent's license to practice law is hereby reinstated with all of the following conditions:

(1) Respondent is ordered to undergo eighteen months of supervised practice. The supervisor is to be nominated by Respondent and must be approved by Disciplinary Counsel; (2) Because of the totality of the circumstances, including, but not limited to, her ex-husband's continued employment at the Huntington Police Department and the recommendations made by Dr. Mulder in the diagnostic evaluation, Respondent must inform her supervisor of all criminal cases she accepts for the period of the supervised practice; (3) Because of the above-referenced reasons, Respondent must refrain, for a period of eighteen months, from accepting any case wherein any member of the Huntington Police Department is involved in the matter; (4) Based on the totality of the circumstances, including, but not limited to, the psychological history of Respondent, Respondent must undergo, for a period of six months, weekly comprehensive psychological counseling with a licensed mental health professional, and must provide a report to Disciplinary Counsel at the end of the six-month period; and (5) Respondent is ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Recommendation accepted.