700 S.E.2d 779

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**John M. CAVENDISH, a Member of the West Virginia State Bar, Respondent.**

**No. 34259.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided June 15, 2010.

**330**

Andrea J. Hinerman, Esq., Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

John M. Cavendish, Esq., Morgantown, WV, Pro Se.

PER CURIAM:

In this lawyer disciplinary proceeding brought against John M. Cavendish, the Hearing Panel Subcommittee of the Office of Disciplinary Counsel determined that Mr. Cavendish committed several violations of the Rules of Professional Conduct and recommended, among other things, that Mr. Cavendish's law license be suspended for a

period of three years. Mr. Cavendish argues, however, that a three-year suspension of his law licence is not an appropriate sanction. For the reasons set forth below, we adopt the recommendations of the Hearing Panel Subcommittee.

**I.**

**FACTS**

With regard to the relevant facts of this case, Mr. Cavendish and the Lawyer Disciplinary Board entered into the following stipulations:

1. John Michael "Mack" Cavendish (hereinafter "Respondent") is a lawyer practicing in Morgantown, Monongalia County, West Virginia, and, in Charles Town, Jefferson County, West Virginia, and as such, is subject to the disciplinary jurisdiction of the Supreme Court of Appeals of West Virginia and its properly constituted Lawyer Disciplinary Board. Respondent was admitted to the West Virginia State Bar on January 11, 2006.

2. Respondent was employed at the Public Defender Corporation in Martinsburg, West Virginia, from on or about August 21, 2006, until on or about February 2, 2007. By statute, he had ninety (90) days to close his private practice.[1]

3. On or about February 1, 2007, without the permission of his supervisor, Deborah A. Lawson, Chief Public Defender for the Public Defender Corporation in Martinsburg, West Virginia, Respondent attended a hearing for an individual who was not a client of the Public Defender Corporation.

4. Daniels Capital Corporation is a company which advances payment to an attorney upon receipt of an assignment for monies to which a court appointed attorney would be entitled to receive from Public Defender Services.[2]

---

1. West Virginia Code § 29–21–17(b) (1996) provides in relevant part that "[i]n no event shall any person employed for more than ninety days as a full-time public defender or full-time assistant public defender be engaged in any other practice of law for compensation[.]"

2. Pursuant to W. Va.Code § 29–21–13a (2008), a private lawyer who serves as counsel for indigent

clients shall, upon completion of each case, submit to the appointing court a voucher for fees and expense reimbursements for services performed on behalf of those clients. By entering into a contract with Daniels Capital Corporation, a lawyer representing an indigent defendant can assign what is owed to him or her by Public Defender Services to Daniels Capital which immediately pays the lawyer up to 75% of the

5. On February 12, 2007, Deborah A. Lawson filed a complaint and alleged that Respondent had improperly accepted payment from Daniels Capital Corporation by submitting false documents for non-existent claims.

6. While Respondent was an employee of the Public Defender Corporation, he submitted notarized Assignment Schedules to Daniels Capital Corporation listing the disposition date for each case as being on or before August 2006. Based upon the notarized Assignment Schedules and Orders Approving Payment of Appointed Counsel Fees and Expenses he completed for the dates and amounts listed below, Respondent subsequently received payment for a percentage of the amount listed on the notarized statements.[3] Upon information and belief, the following are the amounts claimed by Respondent and the date he submitted the claims to Daniels Capital Corporation:

| | | |
|---|---|---|
| (1) | August 23, 2006 | $4,115.27 |
| (2) | August 28, 2006 | $1,491.54 |
| (3) | August 29, 2006 | $1,164.50 |
| (4) | August 30, 2006 | $1,757.50 |
| (5) | September 5, 2006 | $3,000.00 |
| (6) | September 6, 2006 | $2,236.50 |
| (7) | September 12, 2006 | $2,630.50 |
| (8) | September 14, 2006 | $3,530.50 |
| (9) | September 15, 2006 | $4,914.40 |
| (10) | October 25, 2006 | $1,367.00 |
| (11) | October 26, 2006 | $1,371.50 |
| (12) | November 2, 2006 | $1,229.50 |
| (13) | November 3, 2006 | $1,313.00 |
| (14) | November 8, 2006 | $1527.50 |
| (15) | November 9, 2006 | $1,036.25 |
| (16) | November 17, 2006 | $3,256.25 |
| (17) | December 18, 2006 | $2,387.50 |
| (18) | December 21, 2006 | $2,602.75 |
| (19) | January 2, 2007 | $2,773.55 |
| (20) | January 5, 2007 | $2,549.25 |
| (21) | January 8, 2007 | $5,452.14 |
| (22) | January 17, 2007 | $2,413.35 |
| (23) | January 18, 2007 | $1,964.00 |
| (24) | January 22, 2007 | $1,854.99 |
| (25) | January 31, 2007 | $2,932.30 |

\* \* \* \*

9. By submitting these Assignment Schedules, Respondent:

A. Received advance payments from Daniels Capital Corporation for cases to which he was appointed prior to accepting employment at the Public Defender Corporation.

B. Received advance payments from Daniels Capital Corporation for work he had not performed by misrepresenting the amount due him.

C. Received advance payments from Daniels Capital Corporation for work he had performed for his privately retained clients.

D. Received advance payments from Daniels Capital Corporation for funds due a former employer.[4] Respondent was not entitled to receive the payment for these cases and any payment received for these cases should be made payable to Respondent's former employer. (Footnotes 1 and 4 in the original; remaining footnotes added).

At the evidentiary hearing below, Mr. Cavendish testified that he had been appointed to the cases for which he sought payment from Daniels Capital Corporation (hereinafter "Daniels Capital") by either Judge Gray Silver or retired Judge Thomas W. Steptoe. The Hearing Panel Subcommittee's investigation of this testimony indicated that Mr. Cavendish had been appointed to the cases identified in the complaint as being assigned by Judge Silver. The Panel did not make a finding as to the appointments of Judge Steptoe due to the fact that the Panel withdrew its request to Judge Steptoe to obtain

money due to the lawyer. When Daniels Capital Corporation receives the assigned payment from Public Defender Services, Daniels Capital Corporation then pays the lawyer the balance of the payment, less its fee. According to Mr. Cavendish's contract with Daniels Capital Corporation, any fee claim had to be filed within 24 hours of executing the assignment with Daniels Capital Corporation.

3. On each assignment schedule and application for payment made to Daniels Capital Corpora-

tion, Mr. Cavendish falsely represented that he had made application to the court for the payment of money due him.

4. Mr. Cavendish was employed at the Charles Town office of Campbell, Miller & Zimmerman, P.C., from January 2006 until June 2006. From June 2006 until his August 21, 2006, employment with the Public Defender Corporation in Martinsburg, Mr. Cavendish maintained a solo practice.

the information, and the information was not produced by either of the parties in this matter. Nevertheless, the Panel found that pursuant to the stipulation of the parties, Mr. Cavendish was not entitled to the payments from Daniels Capital in that Mr. Cavendish had represented to Daniels Capital that he had made application to the court for payment of this money when in fact he knew this representation to be false.

The Panel further concluded that there are insufficient records in this matter to determine whether Mr. Cavendish actually performed the work that is represented by the payment vouchers submitted to Daniels Capital. Therefore, the Panel did not make a specific finding whether Mr. Cavendish was entitled to any of the monies requested from Daniels Capital, but instead relied upon the stipulated fact that Mr. Cavendish misrepresented to Daniels Capital the amount of monies due him and therefore, he was not entitled to the money he received from Daniels Capital.

It was the position of Mr. Cavendish at the evidentiary hearing that his misconduct was not fraudulent or intentional but rather was the result of memory loss caused by a cognitive impairment. In support of his position, Mr. Cavendish introduced into evidence the deposition testimony of his treating physician, Dr. Wilbur S. Sine, as well as medical records indicating that Mr. Cavendish suffered from severe depression which may be the cause of his alleged memory loss. Mr. Cavendish also testified that he lost many of his records in an October 10, 2006, automobile accident so that he had to recreate some records from memory in order to receive payment from Daniels Capital. Further, Mr. Cavendish opined that as a result of this automobile accident, he was prescribed several medications which adversely affected his mental functioning. Finally, Mr. Cavendish indicated that the computer program he used to prepare the assignment schedules that he submitted to Daniels Capital overwrote the information he had previously entered into the computer program, and this accounts for at least some of the false billing.

In its September 29, 2009, report, the Hearing Panel Subcommittee concluded as a matter of law, that Mr. Cavendish violated Rule 1.15 of the West Virginia Rules of Professional Conduct which provides in pertinent part:

(a) A lawyer shall hold property of . . . third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . .

(b) Upon receiving funds or other property in which a . . . third person has an interest, a lawyer shall promptly notify the . . . third person. . . .

(C) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

In finding that Mr. Cavendish violated Rule 1.15, the Hearing Panel Subcommittee explained that Mr. Cavendish failed to advise the Public Defender Corporation and his former employer of his receipt of fees from Daniels Capital, failed to deliver these fees to the Public Defender Corporation and/or his former employer, and failed to keep these fees separate from his own personal property. Instead, Mr. Cavendish co-mingled the fees with his own personal property and wrongfully converted the fees to his own personal use.

It was also found that Mr. Cavendish violated Rule 8.4(c) of the Rules of Professional Conduct which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" According to the Hearing Panel Subcommittee, Mr. Cavendish represented to Daniels Capital that he was entitled to receive advance payments for fees generated by court-appointed work and provided Daniels Capital with documents that he certified as being true and correct, when he knew these documents were not correct. In addition, Mr. Cavendish continued to represent privately retained clients and his court appointed clients while employed as an Assis-

tant Public Defender, in violation of West Virginia Code § 29-21-17.

As a result of the misconduct mentioned above and after considering mitigating[5] and aggravating factors,[6] the Hearing Panel Subcommittee recommends that Mr. Cavendish's law license be suspended for a period of three (3) years; that Mr. Cavendish make full restitution to Daniels Capital Corporation in the amount of $62,589.31 prior to petitioning for reinstatement; that prior to petitioning for reinstatement, Mr. Cavendish pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure; that prior to petitioning for reinstatement, Mr. Cavendish undergo a psychological and/or medical examination by a doctor and/or psychologist to be agreed upon by the Office of Disciplinary Counsel, and that the examining doctor certify that Mr. Cavendish is fit to practice law, both physically and mentally; and that upon successful petition for reinstatement, Mr. Cavendish must undergo supervised practice for a period of one year.

Mr. Cavendish believes that a three-year suspension of his law license is not an appropriate sanction. He disagrees with the Hearing Panel Subcommittee that his conduct was fraudulent and intentional, and argues instead that his conduct was the result of his mental disability. This matter now comes before this Court for resolution.

## II.

### STANDARD OF REVIEW

We previously have explained that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). In reviewing the recom-

mendations before us, this Court has indicated that

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 3, *Legal Ethics of W. Va. v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). With these standards to guide us, we now consider the appropriate sanction in this case.

## III.

### DISCUSSION

The ODC requests that this Court accept the recommendation of the Hearing Panel Subcommittee. In support of its request, the ODC asserts that Mr. Cavendish violated duties to his clients, the public, the legal system, and the legal profession. According to the ODC, Mr. Cavendish violated duties to his clients by failing to take the necessary steps to close his practice in a timely manner and leaving his clients in a precarious position at the expiration of the statutory 90-day period. He violated duties to the public by failing to exhibit the highest standards of honesty and integrity, and he violated duties to the legal system and the legal profession by using false information in order to obtain money. Further, the ODC contends that Mr. Cavendish acted intentionally and knowingly which is evinced by the fact that he exhibited a pattern of misconduct over a six-month period of time. Finally, the ODC

---

5. As mitigating factors, the Panel found an absence of a prior disciplinary record, inexperience in the practice of law, and the fact that Mr. Cavendish entered into a settlement agreement with Daniels Capital in which he agreed to repay the money advanced to him.

6. As aggravating factors, the Panel found that Mr. Cavendish's actions arose as the result of a selfish motive, constituted a pattern of misconduct involving multiple offenses continuing for a six-month period until it was discovered, and resulted in payments to Mr. Cavendish totaling in excess of $60,000.00.

avers that the amount of potential and real injury is great in that Mr. Cavendish's actions resulted in Daniels Capital paying him in excess of $60,000.00. Moreover, because Mr. Cavendish failed to submit vouchers to the circuit court for payment for his representation of indigent clients, Daniels Capital was not reimbursed for the money it advanced to Mr. Cavendish.

■ In support of his argument that his law license should not be suspended for three years, Mr. Cavendish advances three arguments which we will now proceed to discuss in order. First, Mr. Cavendish argues that, in light of the fact that his only defense is his medical condition during the period of his misconduct, the Panel's refusal to continue the proceedings below to permit his physician to testify at the evidentiary hearing violated his due process rights. We find no merit to this argument. The record below indicates that due to Mr. Cavendish's failure to timely provide his mandatory discovery, the evidentiary hearing was continued from December 5, 2008, to May 7, 2009, to permit Mr. Cavendish to develop the medical evidence on which he intended to rely. In a March 3, 2009, conference including the parties and the Hearing Panel Subcommittee, the Panel indicated to Mr. Cavendish that he would be allowed to call his expert physician, Dr. Sine, at the evidentiary hearing, but that any questions asked of Dr. Sine at the hearing would be limited to what Dr. Sine testified to in a deposition conducted on January 15, 2009. At that time, Mr. Cavendish indicated that this was acceptable to him. At the May 7, 2009, evidentiary hearing, the Panel decided that Dr. Sine's deposition would be admitted into evidence instead of having Dr. Sine testify.

Based on these facts, this Court finds that Mr. Cavendish was given sufficient opportunity to develop his medical evidence. Mr. Cavendish was present at the January 15, 2009, deposition of Dr. Sine and was able to question Dr. Sine. Also, Mr. Cavendish consented to the fact that Dr. Sine's testimony at the evidentiary hearing would be limited to what Dr. Sine testified to in his deposition testimony. Therefore, we find that it was not unfair or prejudicial to Mr. Cavendish for the Panel to admit Dr. Sine's deposition testimony at the evidentiary hearing in lieu of his live testimony.

■ Second, Mr. Cavendish contends that the Panel's interpretation of the nature of his stipulations does not comport with his own interpretation. According to Mr. Cavendish, the only errors that he stipulated to having made on claims submitted to Daniels Capital before October 10, 2006, were two mistaken case numbers. Otherwise, says Mr. Cavendish, the record clearly shows that every client for whom he submitted claims, including those submitted under an incorrect case number, were in fact court-appointed clients. Finally, Mr. Cavendish avers that the Panel's use of these stipulations as a basis to support its legal conclusion that he violated the Rules of Professional Conduct contradicts his intention and memory in agreeing to the stipulations.

■ This Court previously has spoken on the use and effect of stipulations in legal proceedings. Specifically, we have held that "[s]tipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed." Syllabus Point 1, *Butler v. Transfer Corp.* 147 W.Va. 402, 128 S.E.2d 32 (1962). Further, we have explained that

Where facts are stipulated, they are deemed established as full as if determined by the [trier of facts]. A stipulation is a judicial admission. As such, it is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact.

*Matter of Starcher,* 202 W.Va. 55, 61, 501 S.E.2d 772, 778 (1998), *quoting Blair v. Fairchilds,* 25 N.C.App. 416, 419, 213 S.E.2d 428, 430–31 (1975). Moreover, this Court previously has relied upon stipulations of fact in disciplining a lawyer for violations of the Rules of Professional Conduct. *See Office of Disciplinary Counsel v. Battistelli,* 195 W.Va. 373, 465 S.E.2d 644 (1995) (explaining that lawyer's prior suspension was based solely on stipulations of fact).

Our review of the record below indicates that Mr. Cavendish stipulated to the facts as stated by the Hearing Panel Subcommittee in its September 29, 2009, report. Specifically, Mr. Cavendish stipulated to the fact that he received advance payments from Daniels Capital for work he had not performed by misrepresenting the amount due him, for work he had performed for privately retained clients, and of funds due a former employer. When Mr. Cavendish stipulated to these facts, he did not qualify his stipulations by specifying that the stipulation referred only to those claims submitted to Daniels Capital subsequent to October 10, 2006. As a result, Mr. Cavendish cannot now disavow these stipulations before this Court. Therefore, we reject Mr. Cavendish's challenge to the Hearing Panel Subcommittee's reliance on the stipulations made by the parties.

■ In his final argument, Mr. Cavendish contends that the Panel failed to give sufficient weight as a mitigating factor to medical evidence that he was suffering from a mental impairment at the time of the incidents at issue. In support of this argument, Mr. Cavendish points to the testimony of his physician that he should not have been practicing law during the relevant time frame.

■ In Syllabus Point 3 of *Lawyer Disciplinary Bd. v. Dues*, 218 W.Va. 104, 624 S.E.2d 125 (2005), this Court set forth the following test for when a mental impairment should be considered mitigating:

In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Applications of these factors to the evidence below, compels us to conclude that Mr. Cavendish's mental disability does not qualify as a mitigating factor. The medical evidence indicated that during the time period in question Mr. Cavendish suffered from significant depression which could be the etiology of his memory problems. While this evidence satisfies the first prong of the *Dues* test, Mr. Cavendish has failed to satisfy the remaining three prongs. With regard to the second prong, the blanket assertions of Mr. Cavendish and his physician that depression caused or may have caused Mr. Cavendish's memory problems is insufficient to prove that his memory problems caused his misconduct. In addition, Mr. Cavendish adduced no evidence whatsoever that he has experienced a meaningful recovery from his mental disability which makes it unlikely that his misconduct will recur. In fact, he has expressed the opposite. In his opening statement to the Hearing Panel Subcommittee at the May 7, 2009, evidentiary hearing, Mr. Cavendish indicated:

But still I think the manner in which I have responded to ODC and this panel ought to be some indication of my level of impairment. I can't do the simple things that is required of a lawyer to do. I can't do the simple things.

.... I have—I have let my law practice close itself. I have only one active client, who is a misdemeanor case in Berkeley County.

So this is not about—so the outcome of this hearing is not about whether or not I'm going to be practicing law in the future. I can't practice law in the future. I know that now. It's in the transcript.

Because Mr. Cavendish has failed to show that his mental disability caused his misconduct, and that he has experienced a recovery from his mental disability as demonstrated by a meaningful and sustained period of successful rehabilitation that indicates that his misconduct is unlikely to recur, this Court concludes that Mr. Cavendish's mental disability cannot be considered a mitigating factor in determining the appropriate sanction against him.

■ Having found no merit to any of the arguments raised by Mr. Cavendish, we next turn our attention to the factual findings of the Hearing Panel Subcommittee. In doing so, this Court is mindful that the ODC is required "to prove the allegations of the formal charge by clear and convincing evi-

dence." Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995). We have also indicated that "[s]tipulations of fact may ... be used to prove facts in actions where the burden of proof is by clear and convincing evidence." *Matter of Starcher,* 202 W.Va. at 62, 501 S.E.2d at 779. As noted above, Mr. Cavendish stipulated that he received advance payments from Daniels Capital for work he had not performed by misrepresenting the amount due him and for work he had performed for his privately retained clients. Mr. Cavendish further stipulated that he received advance payments from Daniels Capital for funds due a former employer, that he was not entitled to receive payment for these cases, and any payment received for these cases should have been payable to his former employer. Finally, Mr. Cavendish stipulated to the fact that during his employment with the Public Defender Corporation he violated a statute by continuing to represent an individual who was not a client of the Public Defender Corporation. Based on these stipulations, we believe that the Hearing Panel Subcommittee's findings of fact that Mr. Cavendish committed misconduct are supported by reliable, probative, and substantial evidence.

▬▬▬ We also find that Mr. Cavendish's misconduct violated Rules 1.15 and 8.4(c) of the Rules of Professional Conduct. With regard to Rule 1.15, Mr. Cavendish wrongly collected money from Daniels Capital, co-mingled this money with his own personal property, and converted the money to his own use. In addition, Mr. Cavendish stipulated to the fact that he received advance payments from Daniels Capital for funds due his former employer. He stipulated further that he was not entitled to receive these funds, and these funds should have been made payable to his former employer. When Mr. Cavendish received the funds due his former employer, he co-mingled the funds with his personal property and converted them to his own use. Therefore, we find sufficient evidence that Mr. Cavendish violated Rule 1.15. We further find sufficient evidence that Mr. Cavendish violated Rule 8.4(c). The evidence indicates that Mr. Cavendish was dishonest in that he misrepresented to Daniels Capital the amount of money due to him.

▬▬▬ Having found that Mr. Cavendish engaged in misconduct that violated two of the Rules of Professional Conduct, we next address the question of the appropriate sanction that should be imposed on Mr. Cavendish. This Court has held:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, *Office of Lawyer Disc. Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998).

▬▬▬ With regard to the first factor, we agree with the ODC that Mr. Cavendish violated his duties to his clients, to the public, to the legal system, and to the profession. We believe that Mr. Cavendish violated his duties to his clients by failing to comply with the statutory 90–day time period in which to terminate his private law practice after becoming employed by the Public Defender Corporation. As a full-time salaried employee with the Public Defender Corporation, Mr. Cavendish did not have sufficient time in which to effectively represent personal clients. Mr. Cavendish also violated his duties to the public. "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee v. Keenan,* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). By receiving money that was not due him, Mr. Ca-

vendish caused the public to lose confidence and faith in the legal profession. Finally, Mr. Cavendish's dishonest conduct violated his duties to the legal profession and the legal system.

The second factor for our consideration is whether Mr. Cavendish acted intentionally and knowingly. This factor is the crux of this case. Mr. Cavendish presented several reasons for his misconduct including memory loss, an errant computer software program, and the loss of computer records in an automobile accident. If Mr. Cavendish's misconduct truly was caused by an occurrence beyond his control, a lesser sanction would be appropriate. The Hearing Panel Subcommittee found, however, that Mr. Cavendish acted intentionally and knowingly. After carefully reviewing the record below, including Mr. Cavendish's testimony at the evidentiary hearing, we agree with the Hearing Panel Subcommittee that Mr. Cavendish's conduct was intentional and knowing. Mr. Cavendish admits that he submitted assignment schedules to Daniels Capital that contained false information and obtained advance payments from Daniels Capital as a result. He insists, however, that he did not intend to commit the wrongful conduct. Our review of the record indicates that Mr. Cavendish's testimony that he did not intend to falsely obtain money from Daniels Capital is not credible.

Specifically, Mr. Cavendish asserted that the assignment schedules he submitted to Daniels Capital prior to October 10, 2006, were "probably reasonably accurate." They were less accurate after October 10, 2006, according to Mr. Cavendish apparently because on October 10, Mr. Cavendish was involved in an automobile accident that destroyed certain computer records and resulted in Mr. Cavendish being prescribed medications that clouded his memory. Specifically, Mr. Cavendish stated that "I remember virtually nothing from shortly after October 10th when they put me on all that medicine until I sort of began to come out of the fog sometime in March or April of the following year after I just quit everything cold turkey." However, when counsel for the Lawyer Disciplinary Board asked

Mr. Cavendish about an inaccuracy in an assignment schedule submitted prior to October 10, Mr. Cavendish responded that even before October 10, his "perception of the records may well not have been" accurate because "the serious episodes had started considerably earlier than that." In fact, Mr. Cavendish testified that his mental decline began sometime in 2004 even though he passed the bar exam in 2005 and represented clients from that time through the date of the evidentiary hearing. Mr. Cavendish also attributed some of the inaccuracies in assignments submitted to Daniels Capital to an error in his computer software program. He admitted, however, that he continued to use this computer program through January 2007 and submitted another 10 to 15 assignments to Daniels Capital based on records generated by the program. When asked to explain this at the hearing below, Mr. Cavendish responded, "I don't know what I—I don't know what I knew after October 10th." Because Mr. Cavendish's testimony that he did not intend his conduct was vague, inconsistent, and not believable, we are compelled to conclude that he intended his actions.

The third factor for this Court's consideration is the amount of actual or potential injury caused by the lawyer's misconduct. The evidence indicates that based on Mr. Cavendish's misrepresentations, Daniels Capital advanced him in excess of $60,000.00. Also, because Mr. Cavendish failed to submit any payment vouchers to the circuit court for his work on behalf of indigent clients, Daniels Capital was not reimbursed by Public Defender Services for any of the money it advanced to Mr. Cavendish. Therefore, Daniels Capital suffered a significant injury as the result of Mr. Cavendish's conduct.

■ Last, this Court must consider the existence of any aggravating or mitigating factors in determining the proper sanction in this case. We have held with regard to mitigating factors that

Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary

record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syllabus Point 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In the instant case, one mitigating factor is an absence of a prior disciplinary record. We believe, however, that this factor is of limited significance considering that Mr. Cavendish has been a practicing lawyer only since 2005. Another factor is that Mr. Cavendish is not experienced in the practice of law. Finally, Mr. Cavendish entered into a settlement agreement with Daniels Capital in which he has agreed to repay Daniels Capital all of the money that was advanced to him. Considering the nature of Mr. Cavendish's misconduct as well as aggravating factors, however, we do not believe that these mitigating factors are sufficient to reduce the sanction against Mr. Cavendish.

▪ Concerning aggravating factors, this Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott, supra*. Such factors in the instant case include the fact that Mr. Cavendish's misconduct was caused by a dishonest or selfish motive, *i.e.*, the desire to obtain money from Daniels Capital; his actions constituted a pattern of misconduct involving multiple offenses; and these actions resulted in payments to Mr. Cavendish totaling in excess of $60,000.00.

▪ Upon this Court's consideration of the relevant factors including the mitigating and aggravating factors, we conclude that the recommendations submitted by the Hearing Panel Subcommittee are appropriate. In reaching this decision, this Court is cognizant of the fact that

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). Mr. Cavendish violated statutory law by continuing to represent private clients more than 90 days after his employment with the Public Defender Corporation. He received payments of in excess of $60,000.00 from Daniels Capital Corporation by misrepresenting the amount due him and for work he performed for privately retained clients or on behalf of a former employer. Mr. Cavendish's conduct brought financial injury to the Daniels Capital Corporation. It also injured the public by lessening people's faith and confidence in the legal profession. Further, it is significant to this Court that Mr. Cavendish expressed concern at the evidentiary hearing below that he currently is unable to maintain a law practice. As noted above, one purpose of sanctioning lawyers for ethical violations is to protect the public. Mr. Cavendish's belief that he is unable to practice law due to memory problems provides additional support that a three-year suspension of his law license is an appropriate sanction. Based on these factors, we believe that the recommendations of the Hearing Panel Subcommittee are appropriate to punish Mr. Cavendish, to serve as an effective deterrent to other lawyers, to restore public confidence in the legal profession, and to protect the public.

## IV.

## CONCLUSION

Accordingly, we accept the following recommendations of the Hearing Panel Subcommittee:

(1) That the Respondent's law license be suspended for a period of three (3) years;

(2) That the Respondent make full restitution to Daniels Capital Corporation in the amount of Sixty–Two Thousand Five Hundred Eighty–Nine and 31/100 Dollars ($62,589.31) prior to applying for reinstatement;

(3) That prior to petitioning for reinstatement, Respondent pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of lawyer Disciplinary Proceeding;

(4) That prior to petitioning for reinstatement, that the Respondent undergo a psychological and/or medical examination by a doctor and/or psychologist to be agreed upon by the Office of Disciplinary Counsel and said doctor certify that the Respondent is fit to practice law, both physically and mentally.

(5) That upon successful petition for reinstatement, Respondent must undergo supervised practice for a period of one (1) year.

License suspended.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.