**FILED**

**June 5, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-363

_____

LAWYER DISCIPLINARY BOARD,
Petitioner,

v.

BRIAN W. BAILEY,
A Member of the West Virginia State Bar,
Respondent.

_____

Lawyer Disciplinary Proceeding
Nos. 22-05-046, 22-05-358, 23-06-157, 23-05-304, and 23-02-376

LAW LICENSE SUSPENDED AND OTHER SANCTIONS
_____

Submitted:  January 27, 2026
Filed:  June 5, 2026

Kristin P. Halkias, Esq.                          Buckhannon, West Virginia
Lawyer Disciplinary Counsel                  Self-Represented Respondent
Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner
Brian W. Bailey, Esq.

JUSTICE TITUS delivered the Opinion of the Court.

CHIEF JUSTICE BUNN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

# SYLLABUS OF THE COURT

1.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

3.      "'Stipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed.' Syllabus Point 1, *Butler v. Transfer Corp.*, 147 W. Va. 402, 128 S.E.2d 32 (1962)." Syl. Pt. 3, *Law. Disciplinary Bd. v. Cavendish*, 226 W. Va. 327, 700 S.E.2d 779 (2010).

4.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In

imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Off. of Law. Disciplinary Couns. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Aggravating factors in lawyer disciplinary proceedings are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 500 (2003).

6. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

**TITUS, Justice:**

Between 2022 and 2023, the Office of Lawyer Disciplinary Counsel ("ODC") received five separate lawyer disciplinary complaints against Brian W. Bailey. The complainants alleged, among other things, that Mr. Bailey failed to keep his clients reasonably informed about the status of their cases and failed to act with reasonable diligence when representing them.

The ODC filed formal charges against Mr. Bailey on or about June 27, 2024. The Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board held a final hearing on the charges on January 14, 2025 ("the HPS hearing"). Following the hearing, the HPS recommended that Mr. Bailey's law license be annulled, along with additional sanctions. The ODC agrees with the HPS's findings and recommendations. Mr. Bailey argues that the appropriate sanction should be reprimand, probation, or suspension.

Upon careful review of the arguments and the record, we adopt the HPS's factual findings. However, we decline to adopt the HPS's recommendation to annul Mr. Bailey's law license. We find that Mr. Bailey's conduct warrants a two-year suspension of his law license, along with additional sanctions.

## I.      FACTS AND PROCEDURAL BACKGROUND

Mr. Bailey was admitted to the West Virginia State Bar in 2005. He is a solo practitioner and a mental hygiene commissioner in Lewis and Upshur Counties.

The ODC filed formal charges against Mr. Bailey in June 2024.  Each of the five counts of the formal charges corresponded to one of the five complaints submitted to the ODC by Mr. Bailey's clients.  The ODC provided Mr. Bailey with its mandatory discovery, which triggered his obligation to provide reciprocal discovery materials within 30 days.  *See* W. Va. R. of Law. Disciplinary P. 3.4.  Mr. Bailey failed to provide any discovery materials by that deadline, or thereafter.  Based upon Mr. Bailey's failure to provide discovery, the ODC filed a "Motion to Exclude Testimony of Witnesses and Documentary Evidence or Testimony of Mitigating Factors."  Mr. Bailey failed to respond or object to the motion.  Following a pre-hearing conference, the HPS granted the ODC's motion.

At the HPS hearing, the parties submitted a joint stipulation addressing most of the allegations set forth in the ODC's formal charges against Mr. Bailey.  Based upon that stipulation, and the evidence and testimony presented during the HPS hearing, the HPS issued its report finding that Mr. Bailey committed forty-one violations of the West Virginia Rules of Professional Conduct.  We limit our discussion to the facts necessary to analyze the findings and recommendations set forth in the HPS's report.

### A.     Count I-Complaint of Tesla Lewis

Tesla Lewis retained Mr. Bailey in 2019 to contest a will.  Mr. Bailey did not have a written fee agreement with Ms. Lewis or discuss his hourly rate with her.  Mr.

2

Bailey's nonlawyer assistant collected cash from Ms. Lewis, but it is unclear whether those funds represented payments for legal services rendered by Mr. Bailey or fee advances, because Mr. Bailey failed to maintain any records demonstrating that he had earned any fees for legal services provided to Ms. Lewis. Ms. Lewis's funds were deposited into Mr. Bailey's operating account rather than his client trust account.[1]

In February 2020, Mr. Bailey filed a complaint in the Circuit Court of Upshur County on behalf of Ms. Lewis against four respondents. Two respondents answered the complaint, but the other two failed to appear or otherwise respond. Mr. Bailey did not move for default judgment against the two respondents who failed to answer the complaint.

During the representation, Mr. Bailey's nonlawyer assistant served as Ms. Lewis's primary point of contact. Mr. Bailey only interacted with Ms. Lewis during hearings. In May 2020, Mr. Bailey's nonlawyer assistant informed Ms. Lewis of a settlement offer from the respondents, but Mr. Bailey did not personally discuss that offer with Ms. Lewis.

When Ms. Lewis hired Mr. Bailey, she provided a list of potential witnesses, but he failed to contact or subpoena any of them. He did not undertake any discovery or

---

[1] Throughout these proceedings, we employ the terms "client trust account" and "IOLTA account" interchangeably. "'IOLTA' is an acronym for Interest on Lawyer Trust Accounts." *L&D Invs., Inc. v. Antero Res. Corp.*, 248 W. Va. 83, 86 n.3, 887 S.E.2d 208, 211 n.3 (2023) (internal citation omitted).

3

investigation to develop the facts of her case. When Ms. Lewis's lawsuit had been pending for approximately ten months, Ms. Lewis's aunt, perceiving that the case was stagnant, contacted the circuit court to request a scheduling conference, which the circuit court set for January 2021.

On or about May 27, 2021, the two respondents in Ms. Lewis's lawsuit served discovery requests on Ms. Lewis. Mr. Bailey did not discuss those discovery requests with Ms. Lewis or serve responses on her behalf. Mr. Bailey's nonlawyer assistant incorrectly informed Ms. Lewis, on July 7, 2021, that Mr. Bailey had responded to those discovery requests. On August 19, 2021, the respondents participating in Ms. Lewis's lawsuit moved for summary judgment. Mr. Bailey did not inform Ms. Lewis of the existence of this motion or discuss it with her before he prepared and filed a response. The circuit court set a hearing on the motion for October 25, 2021. Mr. Bailey did not inform Ms. Lewis of this hearing. Instead, he informed her aunt that the hearing was "set for around the end of October," and asked the aunt to have Ms. Lewis contact him. When Ms. Lewis attempted to contact Mr. Bailey's office, she could not reach him. Ms. Lewis was not notified of the hearing and did not appear at the hearing. At the hearing, the circuit court inquired of Mr. Bailey regarding Ms. Lewis's absence. Although Mr. Bailey knew that he had not informed Ms. Lewis of the hearing, he nevertheless responded that he was unsure why Ms. Lewis was absent. The circuit court granted the respondents' motion for summary judgment and dismissed Ms. Lewis's claims, finding that Mr. Bailey had failed

4

to provide the respondents with any discovery or offer any evidence to support Ms. Lewis's claims.

Mr. Bailey did not inform Ms. Lewis that the circuit court had dismissed her lawsuit. When, over a month later, she finally learned of the dismissal, she retained a new attorney to appeal the dismissal order.[2]

Ms. Lewis filed a lawyer disciplinary complaint against Mr. Bailey in February 2022. Ms. Lewis's complaint formed the basis for the allegations set forth in Count I of the ODC's formal charges. The HPS found that Mr. Bailey violated Rules 1.1,[3]

---

[2]    *See Lewis v. Sponaugle*, No. 21-1010, 2023 WL 245342 (W. Va. Jan. 18, 2023) (memorandum decision). On appeal, this Court affirmed the circuit court's order.

[3]    Rule 1.1 relates to competence and provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

5

1.3,[4] 1.4(a)(1), 1.4(a)(3), 1.4(a)(4),[5] 1.5(b),[6] 1.15(a), 1.15(c),[7] 3.2,[8] 8.4(d),[9] 5.3(b),[10] and

3.3(a)(1)[11] of the West Virginia Rules of Professional Conduct in relation to Count I.

---

[4]     Rule 1.3 relates to diligence and provides:   "A lawyer shall act with reasonable diligence and promptness in representing a client."

[5]     Rule 1.4 relates to communication and provides, in pertinent part:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

. . .

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information . . . .

[6]     Rule 1.5 relates to fees and provides, in pertinent part:

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing.

[7]     Rule 1.15 relates to safekeeping property and provides, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client

6

## B. Count II-Complaint of Robert L. Moats

Mr. Moats retained Mr. Bailey to represent him in two matters, and Mr. Bailey quoted Mr. Moats a $3,000 flat fee for both representations. Mr. Bailey did not enter into a written fee agreement with Mr. Moats. Although Mr. Moats made payments toward that flat fee, Mr. Bailey failed to maintain any records reflecting the funds he

---

or third person. Such separate accounts must comply with State Bar Administrative Rule 10 with regard to overdraft reporting. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

. . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

[8] Rule 3.2 relates to expediting litigation and provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[9] Rule 8.4 relates to misconduct and provides, in pertinent part: "It is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice."

[10] Rule 5.3 relates to responsibilities regarding nonlawyer assistance, and provides, in pertinent part: "With respect to a nonlawyer employed or retained by or associated with a lawyer: . . . (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer . . . ."

[11] Rule 3.3 relates to candor toward the tribunal and provides, in pertinent part: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."

received from Mr. Moats or demonstrating that he had earned any fees for legal services provided to Mr. Moats. Mr. Moats's payments were deposited into Mr. Bailey's operating account rather than his IOLTA account.

During the criminal representation, Mr. Bailey's nonlawyer assistant served as Mr. Moats's primary point of contact. The nonlawyer assistant, not Mr. Bailey, reviewed the State's discovery with Mr. Moats. After the circuit court sentenced Mr. Moats, he asked Mr. Bailey to file a motion to reconsider. Mr. Bailey states that he prepared that motion, but did not file it. Mr. Moats later sent a certified letter to Mr. Bailey attempting to end their attorney-client relationship and requesting a copy of his case file, but that letter was returned to Mr. Moats as undeliverable in August 2022.

Mr. Moats filed a lawyer disciplinary complaint against Mr. Bailey in September 2022. Mr. Bailey failed to respond to Mr. Moats's complaint within the required timeframe. He also failed to submit any witness information, exhibits, documents, or other information required by Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure. During Mr. Bailey's pre-hearing sworn statement, the ODC asked him to provide a copy of Mr. Moats's file to Mr. Moats, along with a confirmation notice to the ODC within two weeks. Mr. Bailey contends that he provided a copy of Mr. Moats's file, but did not provide confirmation notice to the ODC. Mr. Moats's complaint formed the basis for the allegations in Count II of the ODC's formal charges against Mr. Bailey.

8

The HPS found that he violated Rules 1.1, 1.2(a),[12] 1.5(b), 1.15(a), 1.15(c), 1.16(d),[13] and

8.1(b)[14] of the West Virginia Rules of Professional Conduct in relation to Count II.

---

[12] Rule 1.2 relates to the scope of representation and allocation of authority between client and lawyer and provides, in pertinent part:

> (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[13] Rule 1.16 relates to declining or terminating representation and provides, in pertinent part:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[14] Rule 8.1(b) relates to bar admission and disciplinary matters and provides, in pertinent part:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> . . .
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority,

9

C.  **Count III-Complaint of Clifford Ellis, Jr.**

Clifford Ellis, Jr., retained Mr. Bailey to represent him in a land dispute in 2019. Mr. Bailey orally agreed to represent Mr. Ellis for a $3,000 flat fee. Mr. Bailey did not have a written fee agreement with Mr. Ellis. Mr. Ellis provided receipts showing that he paid Mr. Bailey a total of $5,250 over two years. Mr. Bailey deposited Mr. Ellis's payments into his operating account instead of his client trust account. Mr. Ellis testified that Mr. Bailey's nonlawyer assistant was supposed to notify him when he paid the $3,000 flat fee in full, but she did not. Mr. Bailey occasionally sent invoices to Mr. Ellis, but the invoices did not reflect any balance owed or total amount paid by Mr. Ellis.

Mr. Ellis has difficulty reading and writing. When he asked his granddaughter to help him total the payments he had made to Mr. Bailey, he discovered that he had overpaid Mr. Bailey by $2,250. Mr. Ellis requested a refund, but Mr. Bailey did not issue one.

In the underlying land dispute, there were two separate mediations during which Mr. Bailey departed early, leaving his nonlawyer assistant to attend to Mr. Ellis. Mr. Ellis testified that the opposing party agreed to pay him $7,500 to resolve the dispute, but Mr. Bailey later concurred with the opposing party that the property was not worth $7,500,

except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

10

a position contrary to Mr. Ellis's interests. Thereafter, the opposing party agreed to pay Mr. Ellis $3,500 to purchase the disputed property.

The circuit court ordered that Mr. Ellis and the opposing party execute a deed for the disputed property by December 16, 2022, but Mr. Ellis did not receive a proposed deed from Mr. Bailey's office until several weeks after the circuit court's deadline. On January 10, 2023, Mr. Ellis's girlfriend, who co-owned the disputed property along with Mr. Ellis, informed Mr. Bailey's nonlawyer assistant that the proposed deed contained an erroneous description. Mr. Bailey did not inform the opposing party of the erroneous description for several weeks. In the meantime, the opposing party filed a petition to hold Mr. Ellis in contempt, citing Mr. Ellis's failure to execute the deed by the circuit court's deadline. Mr. Bailey finally contacted the opposing party regarding the deed description error on February 24, 2023. Upon learning of the error in the proposed deed, the circuit court canceled the contempt hearing.

The opposing party sent a proposed corrected deed to Mr. Bailey in March 2023. Although Mr. Bailey's nonlawyer assistant informed Mr. Ellis that she had mailed a copy of the new deed to him for execution, Mr. Ellis did not receive it. Mr. Ellis offered to meet the opposing party to execute the deed, but that did not occur.

Without an executed deed or any further communication from Mr. Bailey, the opposing party filed a renewed petition to hold Mr. Ellis in contempt on May 15, 2023.

11

The circuit court scheduled a hearing on the petition for June 5, 2023, but Mr. Bailey failed to inform Mr. Ellis of the hearing. Although Mr. Ellis tried to contact Mr. Bailey and his nonlawyer assistant, he could not reach them and did not learn of the renewed contempt proceedings against him until he contacted the circuit court directly.

Mr. Ellis appeared at the contempt hearing, but Mr. Bailey did not. The circuit court's law clerk telephoned Mr. Bailey, who stated that he did not want to say anything on the record because Mr. Ellis had filed a lawyer disciplinary complaint against him. The circuit court conducted the hearing in Mr. Bailey's absence. The parties informed the circuit court that neither of them had been able to reach Mr. Bailey to execute the deed. The circuit court edited the deed from the bench and ordered the parties to sign it within ten days. The circuit court took under advisement the opposing party's motion to hold Mr. Ellis in contempt. Mr. Ellis executed the deed within the ten-day deadline, but without Mr. Bailey's assistance. Mr. Bailey did not take any steps to formally terminate his attorney-client relationship with Mr. Ellis.

Mr. Ellis filed a lawyer disciplinary complaint against Mr. Bailey in April 2023. Mr. Bailey failed to submit any witness information, exhibits, documents, or other information required by Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure. Mr. Ellis's complaint formed the basis for the allegations in Count III of the ODC's formal charges against Mr. Bailey. The HPS found that he violated Rules 1.4(a)(3),

12

1.4(a)(4), 1.5(b), 1.15(a), 1.15(c), 1.16(c),[15] 1.16(d), 3.2, 8.4(c),[16] 5.3(b), 3.4(c),[17] 8.1(b), and three violations of Rule 8.4(d) of the West Virginia Rules of Professional Conduct related to his violations of Rules 3.2, 5.3(b), and 3.4(c) in relation to Count III.

### D.  Count IV-Complaint of Roger K. Stobart

Roger K. Stobart retained Mr. Bailey to represent him in a criminal matter. After Mr. Stobart was convicted and sentenced, Mr. Bailey appealed his conviction to this Court.  While that appeal was pending, Mr. Stobart wrote to Mr. Bailey inquiring about the status of his appeal.  Mr. Bailey failed to respond to Mr. Stobart's correspondence and failed to otherwise inform him regarding the status of his appeal.  In April 2023, Mr. Stobart requested that Mr. Bailey provide his entire file for use in preparing a habeas corpus petition, but Mr. Bailey failed to send the file until nearly two years later, after the HPS hearing in January 2025.

---

[15]     Rule 1.16 relates to declining or terminating representation and provides, in pertinent part:  "(c) A lawyer must obtain permission of the court when terminating a representation in litigation. When ordered to do so by a court, a lawyer shall continue representation notwithstanding good cause for terminating the representation."

[16]     Rule 8.4 relates to misconduct and provides, in pertinent part:  "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[17]     The HPS findings state that Mr. Bailey violated Rule 3.4, which relates to fairness to the opposing party and counsel, while specifically quoting Rule 3.4(c).  We interpret this to mean that the HPS found that Mr. Bailey specifically violated Rule 3.4(c), which provides, in pertinent part:  "A lawyer shall not . . . (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

Mr. Stobart filed a lawyer disciplinary complaint against Mr. Bailey in July 2023. Mr. Bailey failed to respond to Mr. Stobart's complaint within the required timeframe. He also failed to submit any witness information, exhibits, documents, or other information required by Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure. Mr. Stobart's complaint formed the basis for Count IV of the ODC's formal charges against Mr. Bailey. The HPS found that he violated Rules 1.3, 1.4(a)(3), 1.4(a)(4), 1.16(d), 8.4(d), and 8.1(b) of the West Virginia Rules of Professional Conduct in relation to Count IV.

### E.    Count V-Complaint of Lisa J. Thomas

Lisa J. Thomas filed a lawyer disciplinary complaint against Mr. Bailey in September 2023, alleging that Mr. Bailey had failed to communicate with her during the five years he represented her in a property dispute. The ODC informed Mr. Bailey of Ms. Thomas's complaint and asked him to respond. Mr. Bailey did not respond to the complaint and failed to submit any witness information, exhibits, documents, or other information required by Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure. Ms. Thomas's complaint formed the basis for Count V of the ODC's formal charges against Mr. Bailey. The HPS found that he violated Rule 8.1(b) of the West Virginia Rules of Professional Conduct in relation to Count V.

## II.    STANDARD OF REVIEW

14

"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). With respect to the HPS's recommendations:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

With these guidelines in mind, we turn to the parties' arguments.

## III.  DISCUSSION

### A.  Stipulations

Mr. Bailey argues that this Court should not consider portions of the stipulations he and the ODC jointly submitted to the HPS because he did not fully review those stipulations before agreeing to them.

The Court affords the HPS's findings of fact substantial deference when they are "supported by reliable, probative, and substantial evidence on the whole record." *Id.* We have previously held that "'[s]tipulations or agreements made in open court by the

15

parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed.' Syllabus Point 1, *Butler v. Transfer Corp.,* 147 W. Va. 402, 128 S.E.2d 32 (1962)." Syl. Pt. 3, *Law. Disciplinary Bd. v. Cavendish*, 226 W. Va. 327, 700 S.E.2d 779 (2010). We have explained:

> Where facts are stipulated, they are deemed established as full as if determined by the [trier of facts]. A stipulation is a judicial admission. As such, it is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact.

*Matter of Starcher*, 202 W. Va. 55, 61, 501 S.E.2d 772, 778 (1998) (quoting *Blair v. Fairchilds,* 25 N.C. App. 416, 419, 213 S.E.2d 428, 430–31 (1975)). "Moreover, this Court previously has relied upon stipulations of fact in disciplining a lawyer for violations of the Rules of Professional Conduct." *Cavendish*, 226 W. Va. at 334, 700 S.E.2d at 786 (citing *Off. of Disciplinary Couns. v. Battistelli*, 195 W. Va. 373, 465 S.E.2d 644 (1995)). Further, this Court has previously prohibited a lawyer in disciplinary proceedings from disavowing unqualified stipulations. *See id.* at 335, 700 S.E.2d at 787.

In the case before us, the HPS properly relied upon stipulations jointly submitted by Mr. Bailey and the ODC, and the evidence presented during the HPS hearing, in making its factual findings. Mr. Bailey now argues that this Court should disregard portions of his stipulations because he did not fully review them before agreeing to them. Like the lawyer in *Cavendish*, Mr. Bailey may not now disavow his stipulations.

16

Other than Mr. Bailey's attempted disavowal of his stipulations, the parties do not dispute the relevant facts or the HPS's finding that Mr. Bailey committed forty-one violations of the West Virginia Rules of Professional Conduct. The record supports, and we adopt, the HPS's findings of fact. We also agree that Mr. Bailey committed each of the rule violations found by the HPS.

### B.     Sanctions

Mr. Bailey objects to the HPS's sanction analysis and recommendation that his law license be annulled, with additional sanctions. Mr. Bailey instead argues that the appropriate sanction should be reprimand, probation, or suspension.

"The Rules of Lawyer Disciplinary Procedure contemplate a variety of possible disciplinary sanctions, ranging in severity from an admonishment to law license annulment[.]" *Law. Disciplinary Bd. v. Schillace*, 247 W. Va. 673, 683, 885 S.E.2d 611, 621 (2022).

> A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

W. Va. R. Law. Disciplinary P. 3.15.

In lawyer disciplinary cases, we apply a *de novo* standard of review to questions concerning the appropriateness of sanctions; however, our review also requires that we give "respectful consideration" to the HPS's recommended sanctions while exercising our "own independent judgment." *McCorkle*, 192 W. Va. at 287, 452 S.E.2d at 378, Syl. Pt. 3, in part. The factors set forth in Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure guide our determination of the appropriate sanctions for Mr. Bailey's conduct.

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Off. of Law. Disciplinary Couns. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

The HPS found that: (1) Mr. Bailey violated his legal duties to his clients, the public, the legal profession, and the legal system; (2) Mr. Bailey acted knowingly; (3) Mr. Bailey's clients suffered real and potential injury from Mr. Bailey's misconduct; and (4) there were multiple aggravating factors, and no mitigating factors should be considered.

### 1.    *Duties Owed to Clients, the Public, the Legal System, or the Profession*

We must first determine whether Mr. Bailey has violated any duties he owed to clients, the public, the legal system, or the profession.  *See id.* We have previously discussed the duties lawyers owe:

> A lawyer owes an ethical duty to clients including the duty of candor, loyalty, diligence, and competence. Lawyers also owe duties to the public who rely on lawyers to protect their interests. The general public deserves lawyers with the highest standards of honesty and integrity. As officers of the court, lawyers owe duties to the legal system whereby they must conduct themselves within the bounds of the law and abide by the rules of substance and procedure which afford the administration of justice. As to the legal profession, lawyers owe an ethical duty to maintain the integrity of the profession.

*Law. Disciplinary Bd. v. Blyler*, 237 W. Va. 325, 341, 787 S.E.2d 596, 612 (2016).

After reviewing the stipulations, testimony, and exhibits, the HPS found that Mr. Bailey repeatedly breached his duties to his clients.  Mr. Bailey breached his duties generally by failing to execute fee agreements with his clients and by failing to deposit client funds into his IOLTA account.

The HPS found that Mr. Bailey breached his duties to Ms. Lewis by failing to investigate or develop her case, failing to keep her informed of the status of the case, failing to respond to discovery requests, permitting his nonlawyer assistant to incorrectly advise Ms. Lewis that discovery responses had been provided to the respondents, failing to

19

discuss a motion for summary judgment and related hearing with Ms. Lewis, and failing to inform Ms. Lewis in a timely manner that her case had been dismissed.

The HPS found that Mr. Bailey breached his duties to Mr. Moats by failing to file a motion for reconsideration and by failing to provide Mr. Moats with a copy of his case file after Mr. Moats requested it.

The HPS found that Mr. Bailey breached his duties to Mr. Ellis by failing to personally communicate with Mr. Ellis during the representation, leaving Mr. Ellis unrepresented at two mediations, failing to refund Mr. Ellis's overpayment, failing to correct errors in a deed at Mr. Ellis's request, failing to timely provide a correct deed to Mr. Ellis for execution, failing to inform Mr. Ellis of a renewed contempt motion and related hearing, and failing to appear at a contempt hearing to represent Mr. Ellis.

The HPS found that Mr. Bailey breached his duties to Mr. Stobart by failing to keep Mr. Stobart informed of the status of his case, failing to consult with Mr. Stobart regarding his options and rights, failing to respond to Mr. Stobart's letters, and failing to provide Mr. Stobart with a copy of his case file after he requested it multiple times.

The HPS found that Mr. Bailey further breached his duties to clients, the public, the legal system, and the profession, generally, by abdicating his duties to his nonlawyer assistant, who was tasked with nearly every duty in his office, including

20

communicating with clients, reviewing and answering mail addressed to Mr. Bailey, responding to messages, preparing documents and deeds, accepting and depositing client funds, and reviewing discovery with clients. Neither Mr. Bailey nor his nonlawyer assistant regularly answered the office telephone, monitored voicemail, returned telephone calls, or answered the mail. Further, couriers frequently returned mail addressed to Mr. Bailey's office as unclaimed.

Mr. Bailey acknowledges that he violated the West Virginia Rules of Professional Conduct but disagrees with some of the HPS's findings. Mr. Bailey admits that his nonlawyer assistant communicated with clients, but he denies that he failed to keep clients adequately informed. As to Ms. Lewis, Mr. Bailey states that he could not investigate her case further because a key witness would not testify unless subpoenaed. He also contends that Mr. Ellis did not overpay him. These contentions are contrary to the joint stipulations submitted to the HPS. As we discussed above, Mr. Bailey may not disavow the joint stipulations he and the ODC submitted to HPS.

We adopt the HPS's findings. Mr. Bailey repeatedly breached the duties of candor, loyalty, diligence, and competence he owed to his clients and the public. We have previously explained that the public "depends on lawyers to navigate the legal system." *Schillace*, 247 W. Va. at 684, 885 S.E.2d at 622. Further, his failures to communicate with clients, opposing counsel, and the ODC breached his duties as an officer of the court and to the public, the legal profession, and the legal system.

21

## 2. *Mental State*

We next consider whether Mr. Bailey acted intentionally, knowingly, or negligently in his ethical violations. We have previously explained:

> [T]he most culpable mental state is that of intent, which consists of conduct by the lawyer with a conscious objective or purpose to achieve a particular result. The next most culpable mental state is that of knowledge when there are acts by the lawyer with awareness of the nature of the acts or the potential consequences of the conduct. However, with the state of knowledge there is no conscious effort to attain a particular result. The least culpable mental state is negligence, which involves a failure to be aware of substantial risks at issue.

*Blyler*, 237 W. Va. at 341, 787 S.E.2d at 612. Rule 1.0(f) of the West Virginia Rules of Professional Conduct further explains that "'[k]nowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances."

The HPS found that Mr. Bailey acted knowingly by failing to deposit any funds into his IOLTA account. The HPS further found that Mr. Bailey failed to keep track of client payments for a significant time and, therefore, knowingly assumed the risk of his conduct. Finally, the HPS found that Mr. Bailey's communication and dilatory behavior were also knowing.

The ODC contends that Mr. Bailey acted knowingly because his misconduct was pervasive, consistent, and persisted over many years. The ODC asserts that Mr.

22

Bailey's consistent misconduct demonstrates a conscious awareness of the nature or circumstances of his conduct. The ODC further argues that "knowingly" encompasses conduct that is careless and recklessly negligent. *See State ex rel. Neb. State Bar Ass'n v. Holscer*, 230 N.W.2d 75, 79 (Neb. 1975); *see also People v. Rader*, 822 P.2d 950, 953 (Colo. 1992) (en banc). Mr. Bailey counters that he negligently breached his duties to his clients.

Other than Mr. Bailey's stipulation that he intentionally failed to appear to represent Mr. Ellis during the contempt hearing, there is no direct evidence that Mr. Bailey acted intentionally or with a "conscious objective or purpose to accomplish any particular result." *Blyler*, 237 W. Va. at 341, 787 S.E.2d at 612. However, Mr. Bailey's forty-one violations include his failures to communicate with clients, respond to discovery requests, supervise his nonlawyer assistant, use his IOLTA account, track client payments, and respond to the ODC's requests for information. Mr. Bailey's extensive pattern of misconduct provides overwhelming evidence that he committed each of these violations knowingly. We therefore find that Mr. Bailey acted knowingly. *See Law. Disciplinary Bd. v. Morgan*, 243 W. Va. 627, 644, 849 S.E.2d 627, 644 (2020) (finding that an attorney's actions "amounted to a disturbing and extensive pattern of misconduct" that "could not be characterized as mere negligence" because the attorney "knew of his wrongdoings").

### 3.    *Injury*

23

Now we turn to the question of whether Mr. Bailey's actions caused actual or potential injury to his clients, the public, or the legal system. We have previously noted that "[t]he level of injury can range from 'serious' injury to 'little or no' injury." *Schillace*, 247 W. Va. at 685, 885 S.E.2d at 623 (quoting *In re Vanderslice*, No. 261, 2015, 2015 WL 3858865, at *12 (Del. June 19, 2015)). "[A] lawyer can inflict more than financial injury when he violates our Rules of Professional Conduct." *Id.* at 686, 885 S.E.2d at 624. In fact, "case delay and understandable frustration with the system establish actual injury." *Id.* at 685, 885 S.E.2d at 623 (citing *Law. Disciplinary Bd. v. Munoz*, 240 W. Va. 42, 49, 807 S.E.2d 290, 297 (2017)).

The HPS found that Mr. Bailey's actions caused actual and potential injury to his clients, the legal system, and the legal profession. The HPS also found that Mr. Bailey's failure to properly account for his clients' payments, along with his dilatory conduct and communication issues, damaged the public's perception of the legal system and the legal profession. We agree.

Mr. Bailey's actions caused actual and potential injuries to his clients, the legal system, and the legal profession. Mr. Bailey's conduct with respect to each of his clients (Ms. Lewis, Mr. Moats, Mr. Ellis, and Mr. Stobart) caused direct and serious harm to each of those clients. Additionally, Mr. Bailey's repeated failures to properly account for client payments and to communicate in a timely and appropriate manner with clients,

24

opposing counsel, and the ODC have caused potential, if not actual, injury to the public's perception of the legal system and the legal profession.

### 4. *Aggravating or Mitigating Factors*

We now address whether any aggravating or mitigating factors justify increasing or decreasing sanctions against Mr. Bailey. We have previously explained that "[a]ggravating factors in lawyer disciplinary proceedings are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 500 (2003).

In considering aggravating factors, the American Bar Association's *Standards for Imposing Lawyer Sanctions* ("ABA's Standards") provide a non-exhaustive list for the Court to consider:

> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge wrongful nature of conduct;
> (h) vulnerability of victim;
> (i) substantial experience in the practice of law;
> (j) indifference to making restitution;
> (k) illegal conduct, including the use of controlled substances.

*Schillace*, at 687–88, 885 S.E.2d at 625–26 (quoting American Bar Association, *Standards for Imposing Lawyer Sanctions,* 9.22 (2019)). We have found that substantial legal experience can be an aggravating factor. *See id.* at 688, 885 S.E.2d at 626.

Mitigating factors are "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Scott*, 213 W. Va. at 214, 579 S.E.2d at 555 (quoting American Bar Association, *Standards for Imposing Lawyer Sanctions,* 9.31 (1992)). We have previously adopted the ABA's Standards regarding mitigating factors, which include, but are not limited to:

> (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, Syl. Pt. 3, in part.

The HPS found that several aggravating factors existed as to Mr. Bailey: (1) prior disciplinary offenses; (2) dishonest or selfish motive; (3) pattern of misconduct; (4) multiple offenses committed in the context of a single disciplinary proceeding; (5) failure to show remorse; (6) vulnerability of a victim; and (7) substantial experience in the practice

of law. The HPS also found no mitigating factors to outweigh these aggravating factors. We agree.

Mr. Bailey argues that the HPS should have permitted him to present evidence of mitigating factors. Mr. Bailey, however, failed to respond or object to the ODC's "Motion to Exclude Testimony of Witnesses and Documentary Evidence or Testimony of Mitigating Factors." The HPS granted the ODC's motion and barred Mr. Bailey from presenting evidence of mitigating factors at the HPS hearing. Mr. Bailey failed to preserve his objection before the HPS and cannot properly raise it for the first time before this Court.

### C. Appropriate Sanctions

Finally, we determine the appropriate sanctions for Mr. Bailey's misconduct. The HPS found that Mr. Bailey's multiple ethical violations warrant a "strong and serious sanction." The HPS recommended: (1) that Mr. Bailey's law license be annulled; (2) that Mr. Bailey make restitution to Mr. Ellis for his overpayment; (3) that Mr. Bailey comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure regarding the duties of disbarred or suspended lawyers; and (4) that Mr. Bailey pay the cost of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure. The ODC asks this Court to annul Mr. Bailey's law license. Mr. Bailey argues for a lesser sanction.

As is typical in lawyer disciplinary cases, the parties' "dispute lies with the propriety of the HPS's recommended sanction[.]" *Law. Disciplinary Bd. v. Hunter*, 249 W. Va. 55, 66, 894 S.E.2d 532, 543 (2023). "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." *Blair*, 174 W. Va. at 494–95, 327 S.E.2d at 671–72, Syl. Pt. 3. Our decision is guided by the factors established in Rule 3.16 of the West Virginia Rules of Lawyer Discipline. We have previously explained:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987). We are mindful that "[t]here is no 'magic formula' for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction; each case presents different circumstances that must be weighed against the nature and gravity of the lawyer's misconduct." *Law. Disciplinary Bd. v. Sirk*, 240 W. Va. 274, 282, 810 S.E.2d 276, 284 (2018).

The misappropriation or conversion of client funds differs from the mishandling of client funds. This Court has repeatedly found that "absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Jordan*, 204 W. Va. at 497, 513 S.E.2d at 724, Syl.

28

Pt. 5, in part; *see also* Syl. Pt. 3, in part, *Law. Disciplinary Bd. v. Greer*, 252 W. Va. 1, 917 S.E.2d 1 (2024); *Law. Disciplinary Bd. v. Wheaton*, 216 W. Va. 673, 684, 610 S.E.2d 8, 19 (2004); *Law. Disciplinary Bd. v. Kupec*, 202 W. Va. 556, 569, 505 S.E.2d 619, 632 (1998). "[M]isappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Law. Disciplinary Bd. v. Freeman*, 252 W. Va. 447, ---, 923 S.E.2d 377, 390 (2025) (emphasis omitted) (quoting *Comm. on Legal Ethics v. Hess*, 186 W. Va. 514, 517, 413 S.E.2d 169, 172 (1991)); *see also id.* at ---, 923 S.E.2d at 391 (Ewing and Bunn, JJ., concurring, in part, dissenting, in part) ("[T]he circumstances that demand disbarment in misappropriation cases typically involve multiple or repeated instances of intentional misappropriation, conversion of client settlement funds as opposed to unearned fees, conversion of client funds for personal use, and other more serious fraudulent conduct.").

Mr. Bailey's practice of depositing client funds into his operating account rather than his IOLTA account does not, alone, demonstrate the moral turpitude necessary to constitute the misappropriation or conversion of client funds. We instead find that Mr. Bailey mishandled client funds, indicating a less culpable mental state than the act of "misappropriation" or "conversion." *See Freeman*, 252 W. Va. at ---, 923 S.E.2d at 391 (Ewing and Bunn, JJ., concurring, in part, dissenting, in part) (citing *Law. Disciplinary Bd. v. Harris*, 251 W. Va. 376, 399–400, 914 S.E.2d 249, 272–73 (2025)). For that reason, mishandling funds may result in a sanction less than disbarment. *See id.* at ---, 923 S.E.2d

29

at 390 (majority opinion) (suspending a lawyer's license for eighteen months after he mishandled funds by depositing unearned legal fees into his business account); *see also Law. Disciplinary Bd. v. Harris*, 251 W. Va. 376, 399–401, 914 S.E.2d 249, 272–74 (2025) (suspending a lawyer's license for two years after he mishandled funds by depositing $50,000 in legal fees into his IOLTA account, then withdrew the entire fee via transfers that had no relationship to any work performed on the cases).

Mr. Bailey committed forty-one rule violations, including failure to communicate, inaction, lack of diligence, depositing unearned retainer fees directly into his operating account, and failing to respond to the ODC. We have previously imposed sanctions less than annulment in cases with similar underlying rule violations. Because attorney disciplinary proceedings are necessarily fact-driven, we consider the sanctions this Court has previously imposed in cases that "involve the most similar underlying conduct and adjudicated Rule violations." *Harris*, 251 W. Va. at 400, 914 S.E.2d at 273. In *Lawyer Disciplinary Board v. Freeman*, 252 W. Va. 447, 923 S.E.2d 377 (2025), this Court suspended a lawyer's license for eighteen months after he committed thirty-six rule violations, including failure to communicate, inaction, failure to refund legal fees, depositing unearned legal fees into his business account, and failure to respond to the ODC's lawful requests for information. In *Lawyer Disciplinary Board v. Morgan*, 228 W. Va. 114, 717 S.E.2d 898 (2011), this Court suspended a lawyer's license for one year after he accepted retainer fees for work he had not performed and deposited them directly into his operating account, among other violations. In *Lawyer Disciplinary Board v. Thorn*,

30

236 W. Va. 681, 783 S.E.2d 321 (2016), "we issued a one-year suspension for multiple counts involving 'nonrefundable, so-called flat fee retainers' where funds were placed into operating, rather than IOLTA, accounts and no work [was] performed[.]" *Harris*, 251 W. Va. at 400, 914 S.E.2d at 273 (citing *Thorn*, 236 W. Va. at 684, 783 S.E.2d at 324). In *Lawyer Disciplinary Board v. Curnutte*, 251 W. Va. 839, 916 S.E.2d 681 (2025), this Court suspended a lawyer's license for six months after he committed eleven ethical violations, including lack of diligence, failure to communicate, and failure to respond to the ODC.

The appropriate sanctions for Mr. Bailey must: (1) punish Mr. Bailey for his ethical violations; (2) "serve as an effective deterrent to other members of the Bar"; and (3) aim to "restore public confidence in the ethical standards of the legal profession." *Walker*, 178 W. Va. at 150, 358 S.E.2d at 234, Syl. Pt. 3, in part.

We agree with the HPS that Mr. Bailey's forty-one rule violations require a "strong and serious sanction." Although Mr. Bailey repeatedly violated multiple rules, annulment is not warranted. We find that a two year suspension will appropriately punish Mr. Bailey for his misconduct, deter other members of the Bar, and restore public confidence in the ethical standards of the legal profession. We adopt the other sanctions recommended by the HPS.

IV.    CONCLUSION

31

For the foregoing reasons, we impose the following sanctions: (1) Mr. Bailey's law license is hereby suspended for two years; (2) Mr. Bailey shall comply with the mandates imposed pursuant to Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding suspended or disbarred lawyers; (3) Mr. Bailey is directed to make restitution to Clifford Ellis, Jr. in the amount of $2,250; (4) Mr. Bailey is required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure, and he must complete twelve hours of CLE devoted solely to Office Management/Ethics prior to submitting said petition; and (5) Mr. Bailey must reimburse the costs of this disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions Imposed.